## ` CHARLESTON.

### CRAIG *v.* CRAIG.

Submitted June 9, 1903. Decided November 21, 1903.

1. FRAUD.

    If the case made by a party seeking the aid of a court of equity is tainted with fraud on his part, it will not aid him. (p. 192).

2. DECREE—*Demurrer.*

    Where a decree disposing of the main issue of the cause makes no mention of the demurrer, the demurrer will be regarded as overruled. (p. 192).

Appeal and *supersedeas* from Circuit Court, Preston County.

Action by Charles E. C. Craig *et al* against Elizabeth Craig *et al*. Judgment for defendant and plaintiff appeals.

*Affirmed.*

V. B. ARCHER, J. A. BROWN and W. BEARD, for appellants.

R. W. MONROE, for appellees.

MCWHORTER, PRESIDENT:

Charles C. Craig, on the first Monday in November, 1900, filed his bill in equity in the circuit court of Preston County against his wife, Elizabeth C. Craig and Charles M. Bishop, wherein he alleged that about forty years before the filing of his bill he, in connection with his brother, John Craig, purchased a farm from Thomas Brown; that he afterwards bought his brother's interest in said farm and undertook to pay Brown for the farm; that he worked very hard to pay for it, but Brown finally died, plaintiff having kept the interest paid which was about all he could do and clear the farm as fast as he could. He then undertook to pay the children of said Brown for said farm, which he had about accomplished when he became involved in a very expensive litigation about a worthless threshing machine which he refused to pay for as unjust and wrong; but was defeated in the suit and was subjected to very heavy costs, and the judgment against him was very large for a man of his means and his family was large and expensive. The farm was sold to pay the judgment and he bought it again, and again undertook to pay for it, and engaged in the lumber business in the hope of making the balance of the money still owing on the farm when he was overtaken by the hard times of 1895-6 and 7, and became worse embarrassed and in an evil hour he made an assignment to Neil J. Fortney, trustee, for the benefit of his creditors, having previously given the defendant, Charles M. Bishop a trust deed on the farm to secure the amount he owed him; that as the panic proceeded things began to grow dark around him and the trustee, and they were eventually forced to surrender and sell and sacrifice plaintiff's property at nominal prices which was almost wholly lost to plaintiff, except the farm which by agreement by the plaintiff and defendant Bishop, was cried off in the name of Bishop and by agreement between the defendants, Bishop and

Elizabeth C. Craig and plaintiff, the farm was placed in the name of Elizabeth C. Craig and the notes executed by her to Bishop with the distinct understanding between Elizabeth and the plaintiff that the notes were to be paid by plaintiff, but his wife and plaintiff's children then at home it was expected would work with plaintiff and help him pay for the farm and he again for the fourth time in his life undertook to pay for the farm, and alleged that defendant, Elizabeth, never owned a cent in the said farm, neither had she ever paid said Bishop anything on it, on the contrary plaintiff had bought the farm more than once and spent his life trying to pay for it; that he had always owned the farm since he purchased of his brother and alleged that he purchased the said farm of Bishop and had the same placed in the name of his wife by agreement that he made with her and Bishop; that his wife never owned a dollar's worth of property in her life, except in her marital rights, and a cow and a bed, up to the time plaintiff purchased the farm from Bishop and that she had no means or facility for acquiring any means to pay on the farm since plaintiff purchased from Bishop, and that she had never paid anything on the notes signed by her for the purchase of the farm; that plaintiff thought when he purchased from Bishop he certainly would be able to pay for the farm, and still thought so if his family would be loyal to him as he expected them to be, but to his great disappointment they had deserted him and were antagonizing him in not allowing him to manage his business and would not allow him to operate the farm and use the proceeds to pay for it, which was done by the approval and direction of his wife, the defendant, she and her eldest son having forcibly taken possession of the farm and about everything on it belonging to plaintiff and much of the property so carried away they had destroyed to the great prejudice and injury of plaintiff and in violation of the agreement between Bishop and said Elizabeth C. Craig and plaintiff; that in pursuance of his purchase for which Elizabeth C. Craig signed the notes by his direction plaintiff began using and operating the farm and so continued to do until the spring of 1900, during which time he faithfully applied all the proceeds thereof paying for the farm; that he paid said porceeds of the farm to Bishop on account of his purchase and that he paid Bishop various other amounts; that plaintiff had made valuable improvements

on said farm and that by virtue of the positive agreement by the said Bishop and said Elizabeth C. Craig and plaintiff, the said Elizabeth had only been holding the farm in trust for plaintiff since she signed the notes, and praying that the said Elizabeth C. Craig be compelled to convey back the farm to plaintiff whenever requested thereto by plaintiff, which she refused to do and asked that the deed made by Bishop to the defendant Elizabeth C. Craig be set aside and annulled, and representing that Bishop had obtained a decree for part of the purchase money coming to him which plaintiff had been unable to pay on account of his family acting as it had, prayed that the suit in favor of Bishop be heard in connection with this suit and that if Bishop should demand that said farm be sold before plaintiff could adjust the amount going to said Bishop that then a restraining order be entered to prevent the paying over to Elizabeth C. Craig or any one else the surplus arising from the sale of the farm after satisfying Bishop's claim, until the court should ascertain and decide to whom the surplus belong, and that the said surplus be paid to plaintiff, and for general relief.

The defendant, Elizabeth C. Craig, filed her answer admitting the general assignment made by plaintiff, of all his property for the benefit of his creditors and the deed of trust given on the farm to secure defendant Bishop, and the sale of the property under the assignment and the sale of the farm under said deed of trust to Bishop, but denied that the farm was purchased by the plaintiff but alleged on the contrary that C. M. Bishop was the purchaser and that plaintiff had nothing whatever to do with the purchase under the trust; that a few days after said Bishop purchased he sold the farm to respondent, but not until after he had positively and repeatedly declined to sell it to plaintiff; averring that the sale was made directly to respondent without any agreement, understanding or intention that it was ever to be turned over to or conveyed to plaintiff if she could succeed in paying for it; that it was true respondent had not the means at the time to pay for the farm, but she had the promise of her three sons and a daughter that they would assist her in paying for it that the home might be saved to her in her old age, as well as for plaintiff who was also expected to assist respondent as was his duty to do in the maintenance and care of the family; but respondent and all of the family knew that it would be utter

foolishness for plaintiff to pretend to buy the farm as his creditors would have taken all his earnings and those of the children as fast as they might be applied as payments on said land under such an arrangement; that respondent was willing for plaintiff to oversee and manage the affairs about the farm as was his duty to do when well and able to work, and it was only when she found that he was not doing so properly that she decided to take the management out of his hands; that respondent had recently met with a fortunate sale of the coal underlying her said land by which she had been able to discharge the · entire . purchase money lien resting on it and had by said sale a fee-simple title to the surface and what was known as the three feet vein of coal and a surplus in money of about $700 and was situated so as to have a comfortable home and living for herself and plaintiff and such of her children as might choose to remain with them, if plaintiff would do right and be content to share the home with them in, peace and abandon his baseless litigation or unnecessary and unjust annoyance to her and her children.

The defendant, C. M. Bishop, filed his demurrer and answer averring that he purchased the tract of land from Neil J. Fortney, trustee, as alleged in the bill; but said that if there was any sacrifice in the transaction he had no part in it, as respondent was advised that plaintiff had voluntarily made an assignment to Neil J. Fortney of all his property including this tract upon which respondent already had a deed of trust to secure his debt and at the sale respondent was compelled to purchase said tract of land in order to protect himself as to his lien; that he openly bid upon the said sale in competition with all other bidders and placed the highest bid thereon and after it was knocked off to him at the price of $1,545.00 received his deed therefor from said trustee. Respondent positively denied that he had any understanding or agreement with said C. C. Craig and Elizabeth C. Craig together or either of them, separately at any time prior to the said purchase, at the time thereof or at any other time, that he would or did purchase or had purchased the farm for said C. C. Craig or Elizabeth C. Craig but that he made the purchase from said trustee in good faith for himself and took his deed therefor and sometime afterwards sold the farm to said Elizabeth C. Craig at a price sufficient to cover his debt, interest and costs; that he would not have sold to said C. C. Craig for the reason

and on account of his failure and inability to pay off the debt existing at the time of the trustee's sale and as averred that a sale to said Craig would simply put him in the position before occupied and he would be taking the risk of a further accumulation of interest and probably cost of a suit to enforce his vendor's lien running the amount beyond the value of the land, but upon representation of said C. C. Craig and Elizabeth C. Craig that he and some of his sons would assist the said Elizabeth C. Craig in making the payments he was induced to, and did, sell it to her; but emphatically denied that there was any understanding or agreement on his part with said C. C. Craig and E. C. Craig or anyone else at any time that said sale was made or intended as a sale to said C. C. Craig or for him in any way.

Some two hundred and eighty pages of depositions were taken and filed in the cause including the depositions of the plaintiff himself, Elizabeth C. Craig, Neil J. Fortney and Charles M. Bishop and others, in which depositions there is much conflict.

The cause was heard on the 18th of December, 1901, when the following decree was entered:

"This cause came on this day to be finally heard upon the process duly served on both of the defendants, bill of the plaintiff, decree *nisi,* bill taken for confessed, separate answers for both of the defendants, and general replications to each of said answers, depositions for plaintiff and defendant Elizabeth C. Craig taken and filed herein, cause regularly set for hearing, and was argued by counsel.

On consideration whereof the Court is of the opinion that upon the pleadings and proofs in this cause, the case is for the defendants.

It is therefore adjudged, ordered and decreed that the plaintiff's bill herein be, and the same is hereby dismissed, and it is further adjudged, ordered and decreed that the plaintiff pay to the defendants their cost about their defense in this behalf expended.

And it being made known to the court that a certain portion of the purchase money coming from W. P. Hurst to defendant Elizabeth C. Craig, on her coal sale to said Hurst, to-wit: $645.32 was put into the hands of Neil J. Fortney pending the determination of this suit; that the said Fortney is hereby di-

rected to pay the said sum to said Elizabeth C. C. Craig or her attorney; whose receipt shall protect said Fortney in the payment thereof." From which decree the plaintiff appealed.

This is a suit to establish a trust upon an alleged oral agreement. At the sale by the trustee, Charles M. Bishop had purchased the farm and had taken a deed therefor from the trustee.

It is contended by appellant that it is admitted in the answer of the defendant, Elizabeth C. Craig, that the farm was purchased from Bishop by the plaintiff, and quotes a part of a paragraph from the answer claiming that it contained such admission. On the contrary the answer shows that the defendant denied emphatically that the plaintiff was the purchaser. This emphatic denial is followed by the paragraph which is only partially quoted by counsel for plaintiff in their brief, which paragraph contains facts intended to show that it was impossible for plaintiff at the time to have purchased the property with any hope or show of ever being able to pay for it or keep it. The paragraph from the answer from which the partial quotation is made, after stating that Bishop had sold the farm to respondent "but not until after he had positively and repeatedly declined to sell it to the plaintiff;" then follows what respondent says, to show the utter futility of plaintiff's making said purchase from said Bishop at the time it was purchased by respondent, but plaintiff's counsel does not give the whole residue of the paragraph which is as follows: "Respondent, not desiring to go into the long history of plaintiff's various purchases of said farm, and his failures to pay for it, as set out in his said bill, admits the truth of said statement, in the main, and says that of all the purchases so alleged to have been made, in the case of no one of them, was the plaintiff in as poor a situation, or had as poor a prospect of paying for said farm, as at the time of his last alleged purchease; when, in addition to his advanced age, and greatly impaired physical condition, he was hopelessly insolvent. He had given up everything he possessed in the way of personal property, except the pittance allowed him under the exemption law, the proceeds of which paid only a trifling per cent of his indebtedness, leaving the rest hanging over him, without any ability to pay it."

It is hard to conceive, indeed, how this can be construed into an admission by the respondent of plaintiff's allegation that he

made the purchase. Bishop had purchased the farm at a public sale, had the deed thereto, from the trustee, and plaintiff had no interest in the farm and no more right to purchase the same than the defendant or any other person. Bishop had very good reasons for not desiring to sell the farm to the plaintiff, who had failed for forty years to pay for the same and was even at that time embarrassed with indebtedness far beyond the value of the farm, as shown by the allegations of his bill as well as by the answer of Elizabeth C. Craig. It is claimed by counsel for plaintiff that the plaintiff, Craig, paid down to Bishop at the time of purchase the sum of 204.00, on said purchase, the price being $2,050.00, agreed upon between them, which $204.00 was paid in the following manner: Craig was indebted to Bishop in the sum of $204.00, which was included in the price of the land, $2,050.00, for which amount the defendant, Elizabeth C. Craig gave her notes to Bishop, the said $204.00 being included in the notes and being owed to Bishop by Craig, plaintiff's counsel claims that the same was a payment of $204 on the land. Upon this theory if plaintiff had owed Bishop at the time an additional $1,846.00 his indebtedness to Bishop would have just amounted to enough to pay for the farm and would have entitled him to a deed from Bishop therefor. Plaintiff claims to have made some little payments to Bishop derived from auctioneers fees and from hauling but no payments of any moment were made until the sale of the coal when the whole purchase money was paid off, leaving a surplus. Counsel for plaintiff in their brief say "There is practically no conflict of evidence upon the main question and claim of the plaintiff," that the land was purchased by him and paid for by him as far as payments were made outside of the sale of the coal and that the title passed to the defendant, Elizabeth C. Craig, at plaintiff's request. There is as direct conflict of evidence on the main question as there could well be, the testimony of C. M. Bishop and E. C. Craig is as positive and direct, that the sale was made by Bishop to the defendant Elizabeth C. Craig as it is found in their answers; also the evidence of the trustee Fortney. When Fortney was asked whether he recollected of anything being said when they were preparing the papers between Bishop and Mrs. Craig "about preparing a contract of some kind by which the land could be sold to Charley (meaning

plaintiff) or of his asking you if you could prepare such a paper." He answered "No sir, I have no recollection of his asking it, on the contrary as stated, the idea of Mr. Craig's participation in the deed was tabooed at the very outset." In *Phelps* v. *Seely,* 22 Grat. 573 it is held: "A resulting trust may be set up by parol testimony against the letter of a deed; and a deed absolute on its face may, by like testimony, be proved to be only a mortgage. But the testimony to produce these results must, in each case, be clear and unquestionable." And in *Troll* v. *Carter,* 15, W. Va. 567, (syl. pt. 7), "Whenever the courts permit parol evidence to be received to establish a trust, they always require such evidence to be clear and unquestionable to produce such results." To establish this alleged oral agreement between himself and Bishop and the defendant Elizabeth C. Craig, the laboring-oar is with the plaintiff and he must establish it by clear and unquestionable evidence. The attempt to establish it is principally by conversations had with the defendants Elizabeth C. Craig and C. M. Bishop, and of parts of such conversations overheard. Upon the evidence submitted in the cause the circuit court has found for the defendants and we can by no means say that his finding is so manifestly wrong as to warrant a reversal of the decree, indeed a strong preponderance of the evidence submitted in the case supports the decree and even if it were otherwise, from the nature of the case the appellate court would have to sustain the decree unless the evidence was so clearly against it as to make the finding of the court manifestly wrong. Even when the evidence is conflicting but of such a character as to make it doubtful which way it preponderated in a cause where the mere preponderance of the weight of the evidence controled, this Court will sustain the decree. *Smith* v. *Yoke* 27 W. Va., 639; *Doonan* v. *Glynn,* 28 *Id.* 715; *Prichard* v. *Evans,* 31 *Id.* 137; *Frederick* v. *Frederick, Id.* 556, (8 S. E. 295); *Richardson* v. *Ralphsnyder,* 40 W. Va. 15, (20 S. E. 854). Appellant contended that the court decided the case and dismissed plaintiff's bill on the idea that the maxim "Where both parties are equally guilty the defendant shall prevail" was applicable; but that it could not be so applicable from the fact that no pleading in the case made it relevant. The allegations of the bill make it clear that at the time of the purchase of the farm plaintiff was deeply involved in debt, that his property had been sold and sacrificed

at nominal prices and was almost wholly lost to him, and according to the theory of his bill he was purcheasing the farm for his own use and had the same conveyed to his wife to protect the tittle against his creditors, his wife being cognizant of his insolvency and indebtedness, accepting the deed for the purpose of holding the farm in trust for the plaintiff against the rights of his creditors and the plaintiff paying for the farm would bring them both clearly within the maxim quoted, and the plaintiff would be guilty of a fraud in concealing his assets from his creditors and the defendant, his wife, would be a party thereto. The court seems to have decided the cause upon its merits and without noticing the demurrer of defendant which it in effect overruled by decreeing upon the merits; *Miller* v. *Miller* 92 Va. 196 (Syl. pt. 2). In *Horn* v. *Star Foundry,* 23 W. Va. 522, at page 543, in rendering the opinion of the Court JUDGE GREEN says: "I need not take time to look up or cite authorities to show, that this contract was fraudulent and contrary to public policy; for it seems to me to be so obviously of this character, that it is only necessary for any lawyer to read the bill at once to pronounce it unquestionably of this character," and says the circuit court ought to have sustained the general demurrer to the bill and dismissed the same at plaintiff's costs. This is what should have been done in the case at bar upon the principle of the maxim *Nemo allegans suam turpitudinem est audiendus."* In *Evans* v. *Folsom* 5 Minn. 342 it is held: "If the case made by a party seeking the aid of a court of equity is tainted with fraud on his part, it will not aid him;" 7 Wait's Actions and Defenses p. 55. It appears from exhibits filed with depositions taken in the case that plaintiff was discharged in bankruptcy from his debts and his creditors have no interest in the issue of this case. The said decree is right and must be affirmed.

*Affirmed.*