# CHARLESTON

## CRAWFORD *et al. v.* WORKMAN.

Submitted February 19, 1908.  Decided March 3, 1908.

1. TRUSTS—*Validity—Want of Consideration—Statute of Frauds.*
   Where there is an absolute conveyance of land, though not upon valuable consideration, upon oral trust to hold it for the use of the grantor, and to reconvey it to him on request, such trust will not be enforced in equity. The statute of fraud forbids it. (p. 20.)

2. SAME—*Necessity of Writing.*
   Where land is conveyed to one, for valuable consideration paid by him, coupled with a trust to hold for the use of a third party, who pays nothing, such trust must be declared or proven by a writing signed by the grantee. An oral trust will not do. (p. 20.)

3. EVIDENCE—*Declaration of Grantor.*
   Declaration made by a grantor in a deed conveying absolute estate in land, made after such conveyance, that another person is owner of the land, or that the grantee holds in trust for him, are not admissible to impair the rights of the grantee conferred by such conveyance. (p. 23.)

4. FRAUDS, STATUTE OF—*Transfer of Reality—Disclaimer.*
   One cannot lose his vested title to land by mere oral admission that it belongs to another. It has long been settled that oral disclaimer of a vested freehold in land can only be by a deed or in a court of record. (p. 24.)

Appeal from Circuit Court, Boone County.

Bill by E. T. Crawford and W. L. Ashby against Allen Workman and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

BROWN, JACKSON & KNIGHT and LEFTWICH & BYRNSIDE, for appellants.

FRANK P. MURPHY and GEO. M. McDERMIT, for appellee Allen Workman.

BRANNON, JUDGE:

By a deed dated 7th May, 1872, D. P. Workman conveyed to his son, Allen Workman, a tract of one hundred acres of land in Boone county. Thereafter Allen Workman and his

father lived on the land.    D. P. Workman had a number of children besides Allen, and certain ones of them, claiming interest in said land, conveyed their undivided interests to E. T. Crawford and W. L. Ashby, and Ashby and Crawford filed a bill against Allen Workman which upon hearing was dismissed without relief, and Crawford and Ashby appeal. The bill alleges that while the deed from D. P. Workman to Allen Workman is an absolute conveyance for $168 consideration, the truth is that it was made to Allen Workman "in trust for the said D. P. Workman for his, the said D. P. Workman's sole use and benefit, and to be reconveyed to the said D. P. Workman upon his request." Just here I will state, what is only a universal rule, that we are compelled to treat the bill as setting up a trust for the sole benefit of the grantor in that deed, D. P. Workman.    One of the attorneys orally arguing this case seemed to discard that theory, and argued that the evidence showed that the deed from Workman to his son was in fact to prevent the land from being made liable for debts of the father, and that the son being under moral obligation to hold the land upon trust to reconvey when the danger from debt should be passed, and having recognized that trust, the same could be enforced notwithstanding the rule that a fraudulent deed is good between the parties, and cannot be recalled, but I repeat that the bill is not predicated upon that theory.    The answer does not set it up.    The fact that the deed was made to defraud creditors simply crops out in evidence.    As it is not involved in the pleadings it is utterly useless to discuss that theory, though counsel relied upon it.    Therefore, I repeat, we must try this case upon that trust set up in the bill.    Very plain it is that where a person grants land though without consideration upon oral agreement to hold in trust for the grantor, the trust is not enforceable, as it would violate the statute of frauds.    Point 6 in *Poling* v. *Williams*, 55 W. Va. 69.    The effort is made to take the case out of that rule on the ground, as alleged in the bill, that the grantor, D. P. Workman, after his conveyance, divided the land among his children by oral partition, assigning each one a share, and putting them in actual possession, and that Allen Workman recognized such partition. It is argued that thus Allen Workman being under moral obligation to hold in trust for his father, such partition cre-

ated an equitable estate in the other children of D. P. Workman, and that this equitable title is enforceable against Allen Workman. For this untenable proposition we are cited to *Bank* v. *Gould*, 48 W. Va. 99. In that case one brother conveyed to another his property to avoid creditors, and later reconveyed it to his brother, and later still creditors of the brother reconveying sought to subject the property to debts against the reconveying brother. These creditors had no judgments or other liens against the reconveying brother, and they were denied the right to subject the property. The court held that as the reconveying brother was under a moral obligation to reconvey, and such reconveyance had been actually made, the land was not liable. At the time of such reconveyance the creditors had no lien. But that case does not hold that a fraudulent grantee can be made to reconvey, nor does it hold that if he makes an equitable title in favor of his grantor or those claiming under him equity will enforce it, there being no other consideration. We are also cited to *Turner* v. *Campbell*, 3 Grat. 77. There a man conveyed slaves to Ragland absolutely upon secret trust that the grantor should have the use of them during life and after his death his widow and children. The grantee, Ragland, recognized this trust and allowed the slaves to remain with the grantor during life, and with the widow and children after his death. After the death of the widow her administrator claimed absolute title against the children and childrens' rights were sustained. Observe that this was a fight between the beneficiaries. The widow had no title in fee to the exclusion of her children. It was not a contest between Ragland and the beneficiaries of the secret trust, and the fraudulent character of the conveyance was immaterial. The beneficiaries could not impeach it as between themselves. The court expressly said that the trust could not have been enforced against Ragland, but as Ragland disclaimed all title and permitted the beneficiaries to enjoy the same the widow's representative, showing no title except as co-beneficiary under the secret trust, could not defeat the execution of the trust. That authority will not do in this case. The plaintiffs claim by no independent contract. Their rights are derived out of the secret trust alleged in the bill; they have no other title. D. P. Workman, if alive, could not enforce that trust; his children stand in

his shoes, and cannot claim when he himself could not. This is held in *Poling* v. *Williams*, 55 W. Va. 70. That case says that where one conveys to another to defraud creditors all the estate of the grantor, except as to creditors, passes, and equity will not at the instance of the grantor or any person claiming under him, as purchaser from him after such conveyance, set the deed aside. It says, "No interest or estate in land so conveyed remains in the fraudulent grantor for his benefit, which can form the basis of such a contract of sale by him, as will create an equity respecting the land." I see no difference between a conveyance to defraud creditors and one in trust for the grantor, except that the latter may be stronger than the former against the grantor and those claiming under him. What vestige of title remained in D. P. Workman to enable him to make a partition or to confer any equitable title capable of enforcement in equity under the familiar principles stated in *Polling* v. *Williams?*

Here may be the proper place to state, as to that alleged partition, that the evidence is highly conflicting. It is utterly denied by Allen Workman in his answer and his own evidence. There is not the shadow of evidence to show that any survey was made, and metes and bounds fixed by magnetic calls for course and distance. Not a tree marked. Not a stake driven. Not a monument settled. Taken at best it was just a general declaration that this child should have a certain piece, another, another piece. Mere talk or silent understanding. The bill asks the court to confirm that partition. It dares not ask an original partition, regardless of the alleged partition, because that would confessedly lose the benefit of the alleged partition, and throw the parties for their right on the naked promise to hold in trust for the grantor, and then there would be no right for partition. Suppose the court would confirm that alleged partition. How could it define the lots and separate the one from the other to be held in severalty when there is not a single corner or line shown in pleadings or evidence? The court could not execute such a partition if it would. *Mathews* v. *Jarrett*, 20 W. Va. 415. It would have to make an original partition according to quantity and quality. Of course, the mere act of D. P. Workman, after his conveyance in making a partition would not bind his grantee. We here need no authority. But it is

said that Allen Workman recognized such a partition. The evidence of his recognition is feeble in the extreme. There is some evidence that when Allen Workman's mother was dying she asked him to convey parcels to the other children and he promised her to do so. Whether this request came from any claim of her part that Allen ought to do so because of a trust, or as a mere call on his generosity, we do not know. There is evidence that Allen Workman was requested by his father on his dying bed to make such conveyance and Allen told him not to trouble himself about that, and that that would be all right. Contra to this evidence is abundant, not only that adduced by Allen Workman, but evidence adduced by the plaintiffs, that Allen Workman frequently declared that he owned the land absolutely, and claimed it. Thus it is utterly impossible to say that Allen Workman recognized such partition. There is evidence that D. P. Workman, after his conveyance to Allen Workman, claimed the land as his in conversation with people. As will appear from cases cited in 4 Encyclopedic Digest 334, it is well settled that declarations of the grantor in disparagement of his title, made after conveyance, are inadmissible to affect the title of his grantee, and of course no claim in his own behalf could be admitted. "When a transfer of property has been made a declaration by the transferrer that he is still the owner of the property, is not admissible against the transferee when made after such transfer, if it is a self serving declaration in his own behalf." *Crothers* v. *Crothers*, 40 W. Va. 169. So, all those declarations of D. P. Workman must go out of consideration. The same principles would apply to his alleged act of partition.

Suppose Allen Workman knew of and assented to such partition in ever so distinct a way. What then? We held in *Cunningham* v. *Cunningham*, 46 W. Va. 1, that, "Declarations of a vendee, after entry and valuable improvements, that he would throw up his article and hold as tenant to his vendor, his possession continuing as before, are insufficient to divest his interest." "One cannot lose vested title to land by oral admission that it is the property of another." *High* v. *Pancake*, 42 W. Va. 607. "Mere oral declarations to destroy title are inadmissible, because parol disclaimers cannot affect a vested title in the face of the statute of frauds." *Suttle* v. *Railroad*, 76 Va. 284. That case says that where

legal title is vested in one no mere parol disclaimer can divest it. "It has been long settled here that disclaimer of a freehold can only be by deed or in a court of record. The case of *Bryan* v. *Hyre*, 1 Rob. Rep. 101, approved." We said in Pt. 11 in *Waldron* v. *Harvey*, 54 W. Va. 608, that "One cannot lose vested title to land by oral admission that it is the property of another." Suppose Allen Workman did recognize this partition, or admit rights under it, they would not divest him of his title as we said again in *Wade* v. *Mc-Dougle*, 59 W. Va. 113, (Pt. 10.) Suppose it be true that. Allen Workman let his old father remain on the land until his death · day. This filial act of love and affection cannot be summoned against him. Suppose he did let brothers and sisters live upon his land and make their humble mountain homes there, is this act of fraternal love and kindness to be brought up in judgment against him? The very fact that they were his brothers and sisters, for whom we must say he had some love, explains satisfactorily why he allowed them to stay upon the land. Their possession was broken. The great bulk of them moved off the land and went to other homes. The old father married a second time and left the home, which he had taken up when he came a veteran out of the Union Army in the Civil War, and moved off to another county and stayed a year taking up another home. So it is utterly untrue that there was any possession continuous evincing a purpose on the part of the other children to claim the land. The evidence is not sufficient to sustain the proposition. I cannot detail that voluminous evidence here. Why should this not be the rule? Shall title to land under clear deed vesting full estate be lost by slippery memory professing to give declarations, or by the false and purjured tongue, in the face of our statute demanding deed or will to pass title, made expressly with the intent to protect and save title from the erring or false tongue stating oral admissions or declarations. The evidence of such partition comes from interested parties. It is frail and weak at best, and conflicting, and we do not see how the judge could have decided otherwise than he did in holding it insufficient to carry the burden of proof. So, if we regard that deed made by D. P. Workman to Allen Workman as one upon no valuable con-

sideration and upon the secret trust to hold, as the bill alleges, in trust for the father, the case cannot be sustained.

There is another legal reason why the plaintiffs cannot succeed. The deed from D. P. Workman to Allen Workman states a consideration of $168 for the little mountain tract. The deed is *prima facie* evidence of that fact. Probably that is the truth from the fact that $168 is stated instead of $170 or $180 or $200 or other even sum. Anyhow, that recital is *prima facie* evidence against the grantor and his children and the plaintiffs, because they are privies in estate. There is the disinterested evidence of Damron that he was buying some timber on the land and wanted to know of D. P. Workman to whom it belonged, and Workman told him that he could buy of Allen Workman, and declared that Allen Workman had paid for the land and said that it was Allen's land. Now, the law is that if one obtains a deed for valuable consideration, whilst a trust for another may be set up, such trust must be either created in writing or must be proved in writing, and such writing must show the existence and terms of the trust. *McCandless* v. *Warner*, 26 W. Va. 754; Hogg's Eq. Princ. 749. Notice that where one acquires land to hold in trust for another, paying no valuable consideration, I mean some third party, not the grantor, the trust may be enforced without such writing. But where the grantee pays valuable consideration, to set up a trust, you must have such writing creating it or admitting it. The cases are different. As above stated it is proven that Allen Workman paid $168 for the land. And if it were not proven I note that the bill does not allege that the conveyance was without consideration and voluntary. Now since the law is that where a conveyance is made on valuable consideration a trust must be either declared or manifested by a writing, to get out from under that rule and show a trust capable of enforcement the bill must allege a want of valuable consideration. It does not. It is silent as to this. This alone defeats the plaintiffs. Some evidence tends to prove, though insufficiently, that the secret trust was that Allen Workman should hold in trust for his father for life, with remainder to the children. Grant this. What the legal result? The conveyance being for valuable consideration such trust would be void, in the absence of a writing. But why this remark,

when the bill does not set up a trust for the children, but only for the grantor? Even if, as there is not, there were full proof of such a trust, it could not avail, as that is not the trust set up in the bill. Both on the law and facts, for want of evidence, we concur in the decision of the circuit court.

A strong circumstance in this case against the pretention of a trust is the fact that D. P. Workman lived from 1872 to 1904, and all the children still in the country, without having this trust executed. Lying dormant so many years in a matter so important to them. Thirty-two years of sleep before the old man went to his final sleep. This suit was not brought until 1906. Thirty-four years after the date of the deed. Is it necessary to quote from *Faulkner* v. *Grantham*, 55 W. Va. 317, that to sustain an express trust by oral testimony against an absolute deed, after a lapse of over thirty years the evidence must be clear, full and explicit, and not open to grave doubts, contradictions and circumstances of suspicion, as this case certainly is?

Decree affirmed.

*Affirmed.*