# CHARLESTON.

## CASSADY v. CASSADY.

### Submitted February 18, 1914.   Decided April 7, 1914.

1. EQUITY—*Intervention.*

   A stranger to a chancery suit, claiming an interest in the subject matter thereof, may, with leave of the court, make himself a party thereto by petition. (p. 54).

2. TRUSTS—*Resulting Trust—Evidence to Establish.*

   To establish a resulting trust in land, the evidence must be clear and unequivocal. Mere admissions of joint purchase and ownership in common are too uncertain and indefinite. (p. 55).

5. WITNESSES—*Transactions With Deceased Persons—Resulting Trust.*

   The claimant of title by resulting trust in land of which another died legally seized is not a competent witness to prove payment of part of the purchase money to or through such other person, nor is his wife. (p. 55).

Appeal from Circuit Court, Kanawha County.

Suit by Laura D. Cassady, guardian, etc., and others,

against Robert B. Cassady and others.   From the decree, plaintiffs appeal.

   *Reversed, Cross-bill Dismissed, and Cause Remanded.*

   *E. B. Dyer* and *Morgan Owen,* for appellant.

   *L. E. McWhorter,* for appellee.

POFFENBARGER, JUDGE:

   In a suit brought by Mrs. Laura D. Cassady, as guardian of her son Robert B. Cassady, for the sale of his interest in the real estate of which his father died seized and possessed, consisting of the residence property in Charleston and some lots in Charleston, St. Albans and the town of Elerslie, near Winifrede, and for authority, as such guardian, to execute deeds for certain lots in Elerslie, sold by her husband in his lifetime, James R. Guard, over the objections of herself in her own right and as guardian and of Bruce D. Cassady, the other heir, both of whom appeared for the purpose, filed his petition claiming title, by way of resulting trust, to an undivided half interest in the Elerslie lots and in uncollected purchase money of the lots sold, and praying that it be treated as an answer and cross-bill and that Mrs. Cassady, in her own right and as guardian, and Bruce D. Cassady be made parties to it and that his alleged title be established.   Waiving process, they appeared and filed their joint and separate demurrer and answer to the petition treated as a cross-bill. On the evidence adduced, the court decreed to Guard a half interest in the uncollected proceeds of the sold lots in Elerslie and title to an undivided half interest in the unsold lots therein.

   The objections to the filing of the petition and the demurrer thereto were properly overruled.   A stranger to a suit, having an interest in the subject matter thereof, may make himself a party to it by petition, with leave of the court.   *Fowler* v. *Lewis' Adm'r.,* 36 W. Va. 112.   As to the admission of new parties, the trial court has discretionary power.   *Belton* v. *Apperson,* 26 Gratt. 207.

   Alleging payment of one half of the purchase money by Guard, the petition is sufficient in substance.   *Hamilton* v. *McKinney,* 52 W. Va. 317; *Currence* v. *Ward,* 43 W. Va. 367; *Bank* v. *Carrington,* 7 Leigh 566; *Walraven* v. *Lock,* 2 P. & H. 547.

The evidence, however, is said to be too general, indefinite and uncertain to warrant the decree entered. Numerous admissions of Guard's interest in the land, in words and by conduct, on the part of R. B. Cassady, deceased, were established by the testimony of credible witnesses, men of recognized integrity and standing in the community, but all of them are vague and may be inconclusive as to the mode of acquisition of such interest and consistent with the theory of a mere verbal contract of purchase from Cassady, not good under the statute of frauds. He told several persons Guard was an equal owner with him. Others formed an impression to that effect from conversations with him and from his having referred them to Guard in negotiations and dealings respecting the lots and materials and machinery thereon. They together laid the land off into lots after its purchase. Cassady paid all the purchase money to the vendor and there is no proof of Guard's having furnished any of it to him. Guard's check for $2240.00 was deposited to Cassady's credit in bank, December 31, 1903, and the bank entry was as follows: "J. R. Guard note $2240.00"—Guard owed Cassady a note for $2000.00, given for part of the purchase money of a lot in Charleston, dated January 1, 1902, and due two years after date which together with interest, amounted to $2240.00 at the date of the payment. No other payment is shown by competent evidence to have been made. Guard admits he paid no money except what he paid on the note, but says Cassady, after that payment, held the note and used the money in buying property and then repaid himself, or deducted the note and interest, from Guard's share of the proceeds of sales of machinery and materials from the land and some lots sold out of it, but his testimony, clearly inadmissible, is objected to, wherefore nothing remains but the admissions and conduct.

The circumstances of the purchase, detailed by him, if shown by competent evidence, would strengthen the admissions, but they appear in the testimony of no other witness. The property was an abandoned manufacturing plant, consisting of the land, substantial steel buildings and much expensive machinery, against which there was an $80,000.00 bond issue. Guard says he and Cassady bought the bonds and

stock of the company for $3750.00 reduced from $4250.00 by an allowance of $500.00 for foreclosure expenses. Then, that he, Guard, was appointed receiver of the property, and the expectation was to be reimbursed for the purchase money of the bonds and costs out of sales of the buildings, materials and machinery. His evidence, if admissible, would tend to prove such reimbursement, and that no money was actually paid for the land at the judicial sale. In other words, the joint ownership was in the bonds and stock, personal property, which was transformed into the land by the judicial sale of the property to satisfy the bonds. But none of this appears otherwise than by the incompetent evidence of the cross-bill plaintiff.

This out, nothing remains but proof of oral admissions of title and these are wholly insufficient. A resulting trust arises out of payment of purchase money, or the equivalent thereof and not otherwise. *Crawford* v. *Workman,* 64 W. Va. 19; *High* v. *Pancake,* 42 W. Va. 607; *Waldron* v. *Harvey,* 54 W. Va. 608. All the admissions are susceptible of two or more interpretations. They may mean nothing more than that, after Cassady had bought and paid for the property with his own money, he verbally sold Guard a half interest in it. There is no direct and positive admission of actual payment of a portion of the purchase money by Guard. The strongest expressions are that they bought the land, owned it together and were equal partners in it. How they bought together or became equal owners is not disclosed, and there is no proof of any prior or contemporaneous contract or relation between them, respecting the land, that could constitute an independent equity as the basis of a parol trust in the land, such as was found in *Floyd* v. *Duffy,* 68 W. Va. 339 and the authorities there cited. Some purchase money of lots was divided between them, but that was subsequent to the purchase and stops short of disclosure of the nature of Guard's interest. Notwithstanding this circumstance, he may have had only an unenforcible parol contract of purchase.

As we declared in *White* v. *White,* 64 W. Va., 30: ''The significance of language used in a parol agreement always depends upon the situation of the parties at the time, their prior and subsequent conduct, the nature of the subject matter, the purposes they had in view and all the surrounding

circumstances. It sometimes means more, and sometimes less, than the words employed signify in their usual and ordinary acceptation.'' Under this well settled doctrine, we are compelled to say the competent evidence adduced is insuficient, on account of its uncertainty and vagueness, to prove an equitable title in the cross-bill plaintiff.

The decree complained of will be reversed, the answer in the nature of a cross-bill dismissed and the cause remanded.

*Reversed, Cross-bill Dismissed, and Cause Remanded.*