Alpha D. Wilcoxon

*v.*

Zina Wilcoxon Carrier, *et al.*

(No. 10067)

Submitted January 18, 1949. Decided April 5, 1949.

638

*Shedan & Shedan, George Shedan,* and *Joseph J. Shedan,* for appellant.

*E. R. Staats,* and *A. G. Matthews* and *Stanley D'Orazio,* for appellees.

RILEY, JUDGE:

This is a suit in equity brought in the Circuit Court of Wood County to establish a resulting trust in favor of the plaintiff, Alpha D. Wilcoxon, in a certain residential property in Parkersburg. The holder of the legal title, Zina Wilcoxon, now Zina Wilcoxon Carrier, the older daughter of plaintiff and Minnie Mae Wilcoxon, together with her husband, John Carrier, in an answer suggested that Minnie Mae Wilcoxon had either a full or part interest

therein, and asked that the latter be made a party defendant. Subsequently, Minnie Mae Wilcoxon in her answer and cross bill made claim to the property in issue, likewise on the theory of a resulting trust. From a decree, providing that the property be conveyed to the plaintiff, Alpha D. Wilcoxon, and Minnie Mae Wilcoxon, jointly, plaintiff, Alpha D. Wilcoxon, prosecutes this appeal.

In the bill of complaint plaintiff alleges that he purchased the property with his own funds; that at time of the purchase his wife had a judgment outstanding against her and, as a matter of convenience and precaution, the deed thereto was taken in the name of his daughter, Zina Wilcoxon, to prevent the property from becoming involved in any litigation; that plaintiff took immediate possession of the property, improved the same, paid the taxes thereon, insurance premiums and other expenses, and in due time paid off the purchase price for the property; that Zina Wilcoxon had expended no sum or sums of money thereon; that John Carrier had no inchoate right of dower therein; and that Zina Wilcoxon, having no interest in the property, held the same for plaintiff, and should be required to transfer the property to him.

Zina Wilcoxon and her husband, in their answer "deny that they were holding the legal title to said property in trust for" Alpha D. Wilcoxon; charge that ownership "is vested in full or in part in" Minnie Mae Wilcoxon; and assert that they are willing, on direction of the court, to execute and deliver a deed to the real owner or owners of the property.

Minnie Mae Wilcoxon in her answer denies the material allegations of the bill of complaint. By way of cross bill, she alleges that, while plaintiff and she were living together as husband and wife in Mason County, she was the owner of several parcels of real estate in that county; that plaintiff and defendant, Minnie Mae Wilcoxon, became estranged; that both she and her husband were threatened with separate court proceedings; that a judgment was

taken against her in Mason County in the amount of $2,500.00, on September 9, 1935, which has been fully satisfied; that she and her husband decided that moving to Parkersburg would help to settle their domestic and financial differences; that purchase was made of the property involved herein, it having been agreed between them that the property be conveyed to the daughter in trust for both plaintiff and his wife; that since 1940 she has been forced to make her own living; that plaintiff seeks to deprive her of her legal rights and peaceable enjoyment of the property; that the placing of the property in the daughter's name was to avoid any judgment that might be taken against plaintiff, and eventually to get the property in the latter's name; and that by such fraud plaintiff is not entitled to maintain his suit. The cross bill prays that Zina Wilcoxon be required to convey the property, or at least a one-half interest therein, to her; and, in the latter event, if the property is not susceptible of partition that it be sold and the proceeds derived therefrom be divided between Minnie Mae Wilcoxon and plaintiff.

In a replication, plaintiff avers that the judgment in Mason County against his wife had never been fully satisfied; denies again that his wife has any interest in the property; and, further, avers that Zina Wilcoxon holds the property in trust for him, and not for him and his wife jointly.

From the time of their marriage in 1902 to January, 1935, at which latter time the family moved to Parkersburg, the Wilcoxons had resided continuously in Mason County. Plaintiff, a carpenter by trade since 1908, had engaged to some extent in buying and selling small tracts of real estate and making small loans, practically all of such transactions having been carried on in the name of his wife. He states, and his wife admits, that such was the practice, at least in so far as plaintiff's property was concerned, the Parkersburg purchase in 1935 being an exception.

During their residence in Mason County, Minnie Mae Wilcoxon had devoted most of her time to looking after the home and tending the cows and chickens. She testified that she sold chickens and eggs and did a little sewing, for which she received money. However, the husband paid for the feed for the cows and chickens and kept up the family table. But the record is silent as to the amount Minnie Mae Wilcoxon earned by her sewing and farming activities, and the husband testified that his wife's earnings did not exceed $100.00.

Prior to the moving to Parkersburg an action had been instituted in the Circuit Court of Mason County against Mrs. Wilcoxon for an assault on another woman in the vicinity of the Wilcoxon's then home. On September 9, 1935, a judgment was entered against her in such action in the amount of $2,500.00. Mrs. Wilcoxon testified that plaintiff was for a time apprehensive concerning a possible action against him based on a charge of alienation of affections. However, nothing ever came of such threat, if one ever actually existed.

The deed for the Parkersburg property bears date of March 30, 1935, Zina Wilcoxon being designated therein as grantee. The consideration was $2,800.00: "Twelve Hundred ($1200.00) Dollars, cash in hand paid, the receipt of which is hereby acknowledged", and a series of thirty-two notes, each in the amount of $50.00, executed by Alpha D. Wilcoxon and Zina Wilcoxon, respectively, one note coming due every two months. The notes were all paid within two years, and a vendor's lien, retained to secure payment thereof, was released March 9, 1937. The deed after recordation was mailed to plaintiff at Parkersburg, and the notes as paid, together with the release of the vendor's lien, were turned over to plaintiff.

At the outset it should be pointed out that Zina Wilcoxon holds subject to a resulting trust. "A resulting trust arises out of payment of purchase money, or the equivalent thereof and not otherwise." *Cassady v. Cassady*, 74

W. Va. 53, 56, 81 S.E. 829. See also *Crawford v. Workman,* 64 W. Va. 19, 61 S.E. 322. The grantee, as well as the other parties in interest, admits that she took the title without paying even any part of the purchase price. So the question here is: In whose favor is this resulting trust to be decreed?

Plaintiff testified that the down payment mentioned in the deed for the Parkersburg property consisted of a "Cashier's Check" on the Mason County Bank at New Haven, West Virginia, in the amount of $700.00, and an additional $500.00 which he borrowed from his brother. The $700.00, accounted for by the cashier's check, was a part of the $1,200.00 which plaintiff said he had accumulated over a period of some twelve to fifteen years, from pension, labor as a carpenter, dealings in real estate and the making of small loans.

Plaintiff testified that, between the years of 1928 to 1930, he had made four several loans, totaling $1,200.00, to the Independent Order of Odd Fellows, Almedia 57, the total of which was repaid in a "lump sum" by check in November, 1933, and plaintiff introduced in evidence a page from a personal account book showing the amounts loaned to and paid off by that organization, the total being $1,200.00. Plaintiff further testified that he handed this check, with deposit slip and bank book, to his youngest daughter, Auburna, to deposit to his account; that initially the down payment for the property was to be $700.00 and, in accordance therewith, he gave to the vendors his check in that amount on the Mason County Bank, which shortly thereafter was returned with the notation "no funds"; that on inquiring at the bank, plaintiff learned that the check, given to his daughter, Auburna, for deposit, had been deposited as a time deposit to his wife's credit; that the bank cashier, although calling attention to the rule requiring that a notice of thirty days be given before withdrawal from a time deposit, issued to plaintiff a check for the $700.00; that, in order to get the vendors to complete the sale, plaintiff agreed to increase the down pay-

ment to $1,200.00; and to meet the increase in the down payment, he had to borrow $500.00 from his brother. The $200.00 insurance money reimbursing plaintiff for tools destroyed in a fire, accounts for another $200.00 which, plaintiff testified, went into the property.

Although plaintiff's wife claimed that both the $1,200.00 and the $200.00 insurance money, hereinbefore referred to, were her own, her testimony concerning how she obtained such sums is vague and unsatisfactory. To begin with we have her unequivocal statement that she had no money or property of any kind at the time of her marriage. She then states that shortly after the honeymoon the "Rayburn" property was purchased, the deed having been taken in her name. The "Lyons" property was purchased next. According to her testimony the Lyons' property was improved by her husband and Lyons, and her husband put $300.00 of her money into it. In 1912 the "farm" was purchased from her father at $1,800.00. And some years later this farm was sold to raise the $2,500.00 consideration for the purchase of what is spoken of as the "Yonkers" property. On cross examination Mrs. Wilcoxon was unable to state how much was paid for the Rayburn property. She categorically refused to answer counsel's questions as to where she got the money to pay for the Rayburn property and the $300.00 which she claims to have put into the Lyons property. On being pressed regarding the purchase price of the farm, she first testified that her father "approximately gave it" to her; that $800.00 was paid for it; and later that she and her husband paid the latter amount in small deferred payments. She never explained how much money, if any, was paid by her on the last-mentioned property, or where she got the money claimed to have been paid thereon.

Further, to support her claim that the $1,200.00 placed to her credit in the Mason County Bank on November 24, 1933 was her separate property, plaintiff's wife introduced six promissory notes of different amounts and dates ranging from August 19, 1932 to October 8, 1939, on four

of which her name and that of her husband, in reverse order, appear as payees, and on the remaining two the name "A. D. Wilcoxon" appears as payee. She then attempts to explain that the use of the double payee was her husband's method in dealing with her money, and that her name never appeared on any of his personal loans. On such premise, she testified that a $700.00 note, bearing date August 19, 1932, and signed by C. W. Parsons and Roy Parsons, as makers, represented her money, and that such sum, together with other money of hers, made the $1,200.00 deposit above mentioned.

In view of the pending action in Mason County at the time of the execution of the deed for the Parkersburg property, together with Mrs. Wilcoxon's evident fraudulent intent to place the property beyond the reach of her probable judgment creditor, she will not be permitted to recover in a court of equity any interest in the property. This is so, even if she had paid all of the purchase price therefor, as the conveyance was clearly in derogation of the rights of an existing creditor who eventually succeeded in reducing the claim to judgment. Code, 40-1-1, provides that: "Every gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, * * * with intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled to, shall as to such creditors, purchasers, or other persons, their representatives or assigns, be void." This statute inveighs against fraudulent conveyances and, like all other statutes against fraud, is to be liberally expounded and applied for the suppression of fraud. *Harden v. Wagner,* 22 W. Va. 356. If the conveyance in question, as it affects the rights and interests of the defendant, Minnie Mae Wilcoxon, is only tainted with fraud it is under this statute not void in part only, but as to her it is void in its entirety. *Landeman v. Wilson & Beardsley,* 29 W. Va. 702, 2 S.E. 203, 23 A. L. R., Note, P. 222. That the judgment against Minnie Mae Wilcoxon was finally satisfied is of no moment. The fact remains that the conveyance as to her was made for the purpose of defrauding a known

and existing creditor. She, therefore, is precluded by the well known rule, ever prevailing in a court of equity: that a party seeking recourse in a court of equity must come with clean hands. If any money of hers went into the purchase price, it was so tainted with fraud that she cannot retrieve it in a court of equity. *Stout v. Philippi Mfg. & Mercantile Co.*, 41 W. Va. 339, 23 S.E. 571; *Craig v. Craig,* 54 W. Va. 183, 46 S.E. 371; *Gideon v. Putnam Development Co.*, 121 W. Va. 46, 1 S.E. (2d) 399; *Wheeling Dollar Savings & Trust Co. v. Hoffman,* 127 W. Va. 777, 35 S.E. (2d) 84; *Dye v. Dye,* 128 W. Va. 754, 39 S.E. (2d) 98; 2 Pomeroy's Equity Jurisprudence, Section 401 A. As further evidencing Mrs. Wilcoxon's inequitable conduct, she admits that, though she claims only a one-half interest in the property, she tried to obtain the whole interest, as against her husband, by causing the daughter to execute a will devising the property to her. Truly, she is not in this Court of equity with clean hands.

However, the clean hands doctrine does not militate against plaintiff's right to assert whatever interest he may have in the property in controversy, and to establish that he had paid the whole of the purchase price. In *Criss v. Criss,* 65 W. Va. 683, syl., 64 S.E. 905, this Court held: "A conveyance of land to be held in trust for a third person, the grantee and beneficiary intending by putting it in the hands of the grantee, to shield it from imaginary liability which the beneficiary feared might be attempted to be asserted, based on forged papers which the parties feared were in existence, when in fact there were no such papers, and no such liability, and the beneficiary owed no debts, will not be held void under the statute avoiding deeds made with intent to defraud creditors, and the trust will be enforced in equity." Though the defendant, Minnie Mae Wilcoxon, in her pleadings and testimony says that the conveyance in question was taken in the name of the older daughter in order to protect the property from a purported claim for alienation of affections, which the husband of Minnie Mae Wilcoxon's judgment creditor might assert against plaintiff, this alleged claim did not

materialize. And further, as disclosed by this record, the relations between plaintiff and said alleged claimant were not unfriendly. No effort was made to assert any such claim either before, the time of, or after the conveyance in question; and, when the conveyance was actually made, plaintiff was not indebted in any way. There was no creditor to defraud.

Nor does the fact that a tort action was pending against plaintiff's wife at the time of the taking of the deed necessarily bar plaintiff from relief in equity. In this jurisdiction a husband is not "liable for such [wrongful or tortious] acts [of his wife] unless they were done as his agent or by his actual coercion or instigation." Code, 48-3-20. The sudden assault by the defendant, Minnie Mae Wilcoxon, on the woman who later became her judgment creditor was not chargeable to plaintiff and did not constitute the creditor in the pending tort action against the wife a creditor of the husband. Consequently, plaintiff is not precluded from relief on the basis of inequitable conduct unless, by causing the property to be conveyed to the daughter, he assisted the wife in attempting to defraud the plaintiff in the tort action. This in turn depends on the factual issue whether the property was purchased, in part, with funds belonging to the wife or wholly from funds furnished by the plaintiff.

The solution of the foregoing problem involves in the main an appraisal of the factual matters arising on Mrs. Wilcoxon's testimony and a consideration of the effect of Code, 1931, 48-3-16, which provides that: "The earnings of a married woman, and any and all property, real and personal, purchased by her with the proceeds of such earnings, shall in all cases be her own property, and shall not be subject to the control or disposal of her husband, nor liable for his debts." Of paramount interest and bearing directly on the credibility of Mrs. Wilcoxon's testimony, certain facts stand out in bold relief. At the time of her marriage, she had no estate of any kind; her testimony, especially that given on cross-examination, was

generally contradictory and evasive; she categorically refused to answer pertinent questions bearing on the source of the money with which she claims she purchased certain properties in Mason County; and her answers as to the amount of the purchase price paid for the Mason County farm, and whether it was purchased solely with her funds or jointly by her husband and herself were decidedly inconsistent. Although pressed to do so she failed to state how much money she earned and saved through sewing, the sale of chickens, eggs and the milk obtained from the three cows, which she testified were the most she had at any time on the farm. That Mrs. Wilcoxon could and did accumulate any substantial sums from her farming and domestic activities is highly improbable indeed. Even her testimony as to the alleged trucking activities with her father does not disclose in the least what, if anything, she earned thereby. Her unconscionable conduct in attempting to obtain the whole of the property by prevailing on her daughter to make a will devising it to her, coupled with her evasive and inconsistent testimony, renders it difficult for this Court to give her testimony any credence.

In order for one to establish by parol evidence a resulting trust in his favor, the claim must be supported by "certainty and exactness". *Watts Brothers & Co. v. Frith,* 79 W. Va. 89, pt. 2 syl., 91 S.E. 402. See also *Pickens v. Wood,* 57 W. Va. 480, 50 S.E. 818; and *Cassady v. Cassady, supra.* In the last-mentioned case the Court said: "To establish a resulting trust in land, the evidence must be clear and unequivocal". In the recent case of *Wood v. Wood,* 126 W. Va. 189, 194, 195, 28 S.E. (2d) 423, a case involving the conflicting claims of a husband and wife to property in which the rights of creditors or other third parties were not involved, this Court observed that: "* * * The wife does not testify to any work done by her, other than household duties, prior to 1936, at which time the husband became postmaster in the village of their residence, from which the remuneration was about $125 per month. She says that she 'helped' in the post office until it was moved into the husband's store in 1940, and, after that

time, in both the post office and the store until their separation. She makes no statement as to the character of her work or as to its value, nor as to the relative value of her work as compared to that of her husband; nor as to the amounts taken from the business by each, although the husband says that she took out of the business three times as much as he, a statement not denied by her. There was, thus, presented to the court merely a normal and ordinary case of property accumulated during matrimony, by the concurring labor, management and savings of both husband and wife, the title to which has been taken and is held by only one spouse. Such an arrangement does not amount to, or result in, joint ownership, either legal or equitable. * * *'' In essentials the instant case differs from the *Wood* case only in that in the latter case the title to the property in controversy was in the husband's name, whereas the title to the property involved here was placed in a third and supposedly disinterested person, the notes representing more than one-half of the purchase price being secured by a vendor's lien reserved in the deed, signed by the plaintiff and the third party, upon which Mrs. Wilcoxon's name does not appear. So, the *Wood* case, dealing with a controversy between a husband and wife and inferentially at least holding that the evidence to support a wife's claim to property must be clear and convincing, is highly persuasive in the appraisal of the instant case. If Mrs. Wilcoxon felt herself obligated to pay any of the notes, on the basis that she had a monetary interest in the property, they would have been drafted so as to make her a co-payer. Having no obligation to pay the notes, her testimony that she paid a part of them, especially in view of the fact that the parties were estranging, does not seem reasonable.

Moreover, the Wilcoxons, having through a number of years lived in a common dwelling house on the Mason County farm, Mrs. Wilcoxon's activities in tending the cows and raising chickens is typical of the work of a farmer's wife on a normal farmstead. In this, as in other jurisdictions, notwithstanding statutes such as Code, 48-

3-16, a wife, in the absence of an agreement, is not entitled to the earnings from her services either in the household or in her husband's business. In the *Wood* case, this Court cited Madden on Domestic Relations, Section 53, page 155, to the effect that: "As to those services rendered in the household or the business of the husband, the earnings, in the absence of a special agreement, belong to the husband * * *." To like effect see 41 C. J. S., Husband and Wife, Sections 17 and 258; 27 Am. Jur., Husband and Wife, Section 468; Long on Domestic Relations, Sec. Ed., 117. We think that the rule expressed in the above quotation from Madden on Domestic Relations and in the last-mentioned authorities applies with full force to the instant case. If Mrs. Wilcoxon earned and accumulated any money from her activities on the farm, they belong to her husband. As to the "little" sewing, she testified she did, there is nothing in this record to show that she had earned any substantial sum thereby. At least she of all persons was in the best position to testify on that question. This she did not do.

As heretofore indicated, we think that Mrs. Wilcoxon's testimony that she paid any part of the purchase price for the Parkersburg property is unconvincing. She has failed, in our opinion, to establish by evidence "clear and unequivocal", as prescribed in *Cassady v. Cassady, supra,* a resulting trust in her favor in the Parkersburg property. And as Zina Wilcoxon has paid no part of the purchase price for the property, notwithstanding she was a co-maker of the notes secured by the vendor's lien, there is no person, whose funds could have entered into the purchase of the property other than the plaintiff herein. It follows that plaintiff's testimony, supported as it is by the page of his account book, must be taken as true.

The foregoing brings us to the basic equities of the case. Mrs. Wilcoxon cannot and should not prevail because of her inequitable conduct, in addition to the failure of her proof. The defendant, Zina Wilcoxon, as her testimony and pleadings indicate, paid nothing for the conveyance to her. She, therefore, is entitled to no interest in the prop-

erty, and, to her credit, it must be said she claims none. So, the plaintiff, being the only party to this suit who comes into this Court of equity with clean hands and credible proof, alone is entitled to prevail.

For the foregoing reasons we reverse the decree of the Circuit Court and remand the cause, with directions, that the defendants Zina Wilcoxon [Carrier] and John Carrier, her husband, do execute a proper deed conveying the property in question to the plaintiff and on their failure so to do that a special commissioner be appointed to make such deed.

*Reversed and remanded with directions.*