# CHARLESTON.

CROFT LAND CO. *v.* ROYAL BLOCK COAL CO. *et al.*

Submitted January 25, 1921.    Decided February 1, 1921.

1. ACCOUNT—*Accounts Must be Mutual, Intricate, and Complicated; Averment That Equitable Relief is Requisite Without Facts is Demurrable.*

   The general rule is that courts of equity will take jurisdiction of suits for the settlement of accounts where the accounts are mutual, extending over a long period of time, intricate and complicated; but where the bill shows that the specific accounts can be fairly determined in a court of law, and discovery is unnecessary, mere general averments in the bill that adequate relief can be obtained only in a court of equity, without allegation of facts sufficient for discovery, or facts showing discovery is necessary, or complexity or intricacy of mutual accounts, which a court of law could not properly adjudicate, will not be sufficient to confer equity jurisdiction and a demurrer to the bill should be sustained. (p. 577).

2. EQUITY—*Exceptions May be Treated as Demurrer.*

   Where an answer in the nature of a cross bill does not state a case proper for relief in equity, and exceptions are made thereto for want of equity, the court should dismiss or strike out that part of the answer on which affirmative relief is sought to be predicated, treating the exceptions as a demurrer. (p. 578).

3. COURTS—*May Decline to Take Jurisdiction of Their Own Motion.*

   Whenever it appears that jurisdiction is improper, the court

will decline to take jurisdiction, although no objection has been interposed. (p. 578).

4. ACCOUNT—*Bill Considered with Exhibit Held Not to show Right to Relief in Equity.*

Where a bill seeks to assert a purely legal claim, and alleges a necessity for an accounting between two co-defendants in order to ascertain if the plaintiff in the bill is liable to one of the co-defendants as guarantor of the other defendant's obligation, and it appears from an exhibit filed with the bill, that the liability, when so ascertained, could not be set off against the plaintiff's demand at law, and there are no other grounds of equity jurisdiction to sustain the bill a demurrer should be sustained. (p. 578).

Appeal from Circuit Court, Boone County.

Suit by the Croft Land Company against the Royal Block Coal Company and others. From decree for plaintiff, the named defendant appeals.

*Reversed; bill dismissed.*

*Deegan, Boman & Taylor* and *Connor Hall,* for appellant.
*Murphy & Wade,* for appellee.

LIVELY, JUDGE:

This is a suit in equity the object of which is to collect a sum of money claimed to be due to the plaintiff from one of the defendants, by virtue of a written contract.

The Royal Block Coal Co. owned and operated a coal mining lease on 1100 acres of land on Big Horse Creek in Boone County and had constructed and was operating a railroad track extending from the main line of the Horse Creek Branch of the C. & O. Ry. Co. up a small stream a distance of 2,900 feet to a point near or above its tipple on its 1100 acre lease. The Croft Land Co., the plaintiff, owned land adjoining the Royal Block lease at a distance of about one mile up said small stream, consisting of 357 acres, which it had leased for mining purposes to one of the defendants, the White Ash Block Coal Co., which latter company, a very short time after the execution of the contract sued on, sold its mining lease on the 357 acre tract and all of its corporate assets to the defendant, Rich Block Coal Co., and went out of business. An agreement was entered into,

dated the 23rd day of October, 1916, between the Royal Block
Co., the White Ash Co. and the Croft Land Co., whereby the
last named agreed to construct a railroad beginning at the end
of the railroad of the Royal Block Co. at or above its tipple
on the 1100 acre lease, up the stream a distance of 6,500 feet
to the siding of the White Ash Co. on the 357 acre tract, thus
making one continuous line of railroad from the branch line
of the C. & O. Ry. to the 357 acre tract. This continuous line
was to be used jointly by the White Ash Co. and its successors
and the Royal Block Co. and its successors for the purpose of
hauling the coal mined on these two leases out to the C. & O.
road and for other purposes in connection with the development
and proper operation of the leases. The two mining companies
were to maintain and repair the respective portions of this
railroad so constructed by each of them, and the cost of main-
tenance was to be borne by each proportionately to the amount
of tonnage shipped over the same by each company; that is, the
cost of maintaining the railroad built by the Royal Block Coal
Co. was to be paid by each in proportion to the tonnage shipped
over the road by each company; and the cost of maintaining
that portion built by the Croft Land Co. was to be divided
between the Royal Block Co. and the White Ash Co. in pro-
portion to the amount of tonnage shipped over the same by each
of the mining companies. For the privilege of shipping over
the line constructed by the Royal Block Coal Co. the coal and
coke from the 357 acre tract, together with such other materials
as were useful and necessary in carrying on the mining oper-
ations on the 357 acre tract, the Croft Land Co. paid to the
Royal Block Coal Co. the sum of $1048.26; and whenever the
Royal Block Co. decided to begin using that part of the road
to be constructed by the Croft Land Co. for the purpose of
shipping coal and coke on the 1100 acre lease, together with such
other material necessary or useful for carrying on the mining
operations thereon, the Royal Block Co. agreed to pay to the
Croft Land Co. $1048.26. It was agreed between the two
mining companies thus jointly using the entire road that on
the first days of January and of July of each year after the be-
ginning of the use by each of them that they would pay to
each other the proportionate part of the cost of maintaining

the road, based upon the proportion of tonnage shipped by each over the same, as shown by the proper returns of the C. & O. Ry. Co., showing the amounts of tonnage shipped over the road by each. In the case of the failure of the White Ash Co., its successors and assigns to assist in the maintenance of the railroad as above set out, then the Croft Land Co. would assist in the same manner as agreed, "it being the understanding by the parties hereto that the lessee or lessees of the Croft Land Company operating the coal under said 357 acres of land shall bear all the cost of maintaining said road that pertains to the 357 acre tract, as herein mentioned, and that if the said Croft Land Company's lessee or lessees should fail to do so, then the said Croft Land Company will do so."

Plaintiff filed its bill at May rules, 1919, against the Royal Block Coal Co., White Ash Block Coal Co. and Rich Block Coal Co., which last named company was successor to the White Ash Block Coal Co., setting up this contract and alleging that it had paid to the Royal Block Coal Co. the said sum of $1048.26, as agreed, and had put in operation the line extending from said coal tipple to the 357 acre tract, a distance of 6,500 feet; that the White Ash Co. had sold its physical assets to the Rich Block Co. and had surrendered its charter and gone out of business; that the Royal Block Co. was and had been using for a long time the railroad of the plaintiff for the purpose of shipping thereover material and cars necessary and convenient to the mining and marketing of its coal on the 1100 acre lease and for the storage of coal cars and for the convenient handling of the same and had caused a side track to be connected with the plaintiff's railroad track at a point above its tipple so that the coal cars intended for the Royal Block Co's. use could be placed on its track from complainant's railroad; that the Royal Block had not paid, and refused to pay, the $1048.26, agreed to be paid in the contract, although often requested, alleging as a set off thereto that the Rich Block Coal Co. had not paid its proportionate part of the upkeep of the Royal Block Co.'s railroad, for which the plaintiff was responsible to it; that plaintiff had attempted to get a settlement between the two mining companies so that its, plaintiff's, liability, if any, might be determined, but that the two mining companies had not settled

and refused so to do and therefore plaintiff was not able to say for what amount, if any, it was liable under the terms of this contract. The bill prayed that the two defendant mining companies be required to settle their accounts concerning the maintenance and upkeep of the railroad in order that the complainant may discover what its liability is, if any, under the contract, and that each be compelled to disclose the cost of the maintenance of their respective portions of the railroad as provided for in the contract; that the cause be referred to a commissioner for that purpose; that the Royal Block Co. be enjoined from using the plaintiff's railroad until it shall have complied with its contract; and for general relief.

The cause was referred to a commissioner and at the hearing before him in July, 1919, the Royal Block Coal Co. filed a demurrer to the bill; and also an answer thereto in which it admitted that it had been using a portion of complainant's track, by connecting a side track therewith at a point above respondent company's tipple so that the empty cars for use at the tipple could be more conveniently shifted so as not to interfere with the loading at the tipple, and that it has used only about 770 feet of the track of the complainant and for that purpose only; that it has never used any of complainant's railroad for the purpose of shipping coal, coke or other materials thereover; that its use of the small portion has been temporary and for convenience in handling its empty cars; and that it has not been using the complainant's road within the sense, meaning or intent of the said contract, and is not liable for the said sum of $1048.26, under the terms of the contract, and is not liable to its co-defendant for its proportion of the maintenance and upkeep of the entire track of the complainant of 6,500 feet, alleging that its use of the small portion of the track for shifting its empty cars was by virtue of the license, consent and permission of the complainant. The answer, by a schedule attached thereto, gives the amount of tonnage shipped over its road during all the time in question and the amount expended for maintenance during that time. The answer also asks for affirmative relief against the White Ash Coal Co., the Rich Block Coal Co. and the Croft Land Co., alleging as a basis therefor that the White Ash Block Coal Co. had shipped large ton-

nage of coal and other material over respondent's road and that the Rich Block Coal Co. had done the same and that neither had contributed to the cost of maintenance of respondent's road and that respondent did not know the amount of tonnage so shipped and did not know the amount for maintenance which was due from respondent to the other companies for the maintenance of their proportion of the railroad, because it was not advised of the amount spent in the maintenance thereof by them, and asked that the books and papers of the defendants be produced for the purpose of ascertaining the tonnage so shipped by each of them, and for the purpose of ascertaining what amount of money was spent by each for the maintenance of the road. Complainant filed exceptions to this answer, which in effect is nothing more than a demurrer, alleging that no new matter or ground of relief had been alleged and that said answer had alleged no equity upon which affirmative relief could be grounded. To that part of the answer of the Royal Block Co. asking for affirmative relief the Croft Land Co. filed a special reply, denying that it had ever been called upon to make payment, and that it did not owe the Royal Block Coal Co., as stated in its answer and had not forfeited any rights under its contract.

The Rich Block Coal Co. answered, alleging that it had always been willing and ready to make settlement of its accounts with the Royal Block Coal Co., and stating the amount of tonnage which it has shipped over the Royal Block portion of the railroad and setting out the amount of money it has expended in maintaining its portion of the track. The Rich Block Coal Co. in answer to allegations for affirmative relief by the Royal Block Coal Co. says that it has always been ready and willing to settle its accounts under the contract and gives the amount of tonnage shipped and cost of maintenance as a basis for a settlement.

Evidence was taken before the commissioner on behalf of the mining companies for the purpose of showing the tonnage so shipped by each of them and the amount of money spent in the maintenance of their respective portions of the road; also evidence on behalf of the Royal Block Co. showing what use it had made of that portion of the Croft Land Co's. road above its

tipple for the purpose of more conveniently handling the empty cars used by it in taking the coal from its tipple on the 1100 acre mining lease. Evidence was also taken by the Royal Block Co., tending to show that at the time of the making of the contract it was contemplated that the Royal Block Co. would make another opening and construct another tipple in connection therewith near the upper end of the railroad to be constructed by the Croft Land Co., from which new tipple it would ship coal and coke and other material over the Croft line for nearly its entire distance, and that this was the use contemplated by all parties when the contract was made and for which use the $1048.26 was to be paid.

The evidence by the two mining companies on the amount of tonnage shipped by each and the amount expended for maintenance simply corroborated or proved the amounts stated in the respective answers on these two particular points. The commissioner filed his report, which is very meager, and found that the cost of maintenance of the Royal Block Coal Co's. part of the road since it was used by the co-defendant mining companies was $1150.04; that the cost of maintenance of the Croft Land Co. road since use of the same began by the Royal Block Co. was $809.30; that the tonnage of the Royal Block shipped over its road was 91,490 tons; tonnage of the Rich Block Co. 24,677.34 tons; and by the White Ash Co. 103.4 tons; that the tonnage shipped over the Croft Land Co. road by the White Ash Block Coal Co. and the Rich Block Coal Co. is the same as that given above; and in the next paragraph of the report the commissioner states that there was no tonnage shipped over the Croft Land Co. line by the Royal Block Coal Co. The report finds that the Royal Block Co. owes to the Rich Block Co. for maintenance $391.70. It finds the amount due the Croft Land Co. from the Royal Block Co. as $1090.19, being $1048.26 with interest thereon for 8 months. This report was completed on the 17th day of November, 1919, and notice given of the completion on that day, and on the 10th day of December, following, a decree was entered confirming the report and rendering judgment agaist the Royal Block Coal Co. in favor of the Croft Land Co. for $1090.19 and judgment in favor of the Rich Block Coal Co. for $391.70. The decree provided that unless the Royal

Block Coal Co., within 30 days from the rising of the court, paid the amount recovered in favor of the Croft Land Co., including costs of suit, that it should be and was enjoined and restrained from using the railroad of the Croft Land Co. or any part thereof until further order of the court. On the 20th day of that month the Royal Block Co. appeared before the court, which was yet in session, and asked leave to file exceptions to the commissioner's report, which the court permitted, but refused to modify or change the decree formerly entered. From this decree an appeal and supersedeas was allowed to this court.

This summary of the pleadings and statement of the facts at more length than is usual, is made in order to show the exact character of the case, in view of the disposition of the same which we have concluded to make.

We are met at the threshold with a demurrer to the bill; and the question is immediately presented as to whether or not this is a case for equity jurisdiction. It is apparent that there was no difficulty in ascertaining the amount of tonnage which had been shipped by the two co-defendants over the two portions of this continuous line owned and operated in part by the Royal Block Coal Co. and in part by the Croft Land Co.; the same is true as to the ascertainment of the amount of money expended by each for maintenance. It is not necessary to have a bill of discovery for these amounts. They could have easily been obtained in a court of law. The evidence taken on these two items simply substantiated the amounts set out in the answers of each of the co-defendant companies. The real controversy is between the Croft Land Co. and the Royal Block Coal Co. as to the payment of the sum of $1048.26, agreed to be paid by the latter company when it began using the line constructed by the former company, for the purpose of shipping thereon and thereover the coal and coke from the 1100 acre lease, together with such other material as was necessary or useful in carrying on the coal operation and in mining and marketing the coal. The settlement of accounts between the co-defendants, arising from the use of the road and from the maintenance thereof, is a side light to the main issue. It is evident that the Croft Land Co. claimed that the $1048.26 was due

to it when the Royal Block Co. connected its side track or switch with the Croft line for the purpose of more conveniently handling its empty cars; while the Royal Block Co. claimed that ling use of the line was not such as was contemplated by the agreement and that said sum was not due on that account. A difference in the construction of this agreement has arisen between them, which has been brought into a court of equity for settlement. If it should be held in a proper court that the contention of the Croft Land Co. was right and that the use of its roads by the Royal Block Coal Co. was such as would entitle it to this sum of money, then the plaintiff should have its recovery; on the other hand if the contention of the Royal Block is the proper construction, then the use of that small portion of the Croft Land Co's. road by it would rest upon another basis, that of *quantum meruit,* and should be passed upon by a jury. The construction of this contract should be submitted to a jury, with all the facts, conditions and circumstances surrounding the parties, under proper instructions from the court.

Under the allegations of the bill, and under the facts afterwards developed, the settlement of accounts between the codefendants, arising from tonnage shipped and maintenance cost, is of little consequence to the plaintiff. The plaintiff was only liable for its part of the upkeep of the Royal Block Co's. road in the event that it was not paid by its lessee, the White Ash Coal Co. or its assigns, the Rich Block Coal Co. There is no allegation in the bill that its lessees have refused to pay, but simply that no settlements have been made and that the plaintiff does not know its liability for that reason. It is not charged that its lessee will refuse to pay when settlement is made or that it is insolvent and cannot pay its just obligation. The contract exhibited with the bill shows that the lessee of plaintiff's 357 acre tract had agreed with plaintiff to pay for this maintenance, and it was only in the event the lessees failed, that plaintiff would assist in the maintenance. The liability of the plaintiff in that regard is consequential. If its lessee is financially responsible then no obligation would rest upon the plaintiff, and in its replication to the answer of the Royal Block Co. asking affirmative relief because of failure of plaintiff's

lessee to pay the proportionate part of the maintenance, it denies liability. We have the anomalous situation of a plaintiff asking for a settlement of accounts between co-defendants, and then denying liability for any amount found due by the settlement. There is no mutuality of accounts alleged in the bill between the plaintiff and the defendant, Royal Block Coal Co. As before stated, the main contention is over the payment of the $1048.26 and the construction of the contract in that regard. Besides, if there is a mutuality of accounts between the Croft Land Co. and the defendant Royal Block Coal Co., these accounts are not complicated nor intricate and the items could be easily obtained.

Equity jurisdiction in this state for the settlement of accounts is not clearly defined. No precise rule can be laid down which would govern each particular case, and it may be safely affirmed that a court of equity can not take cognizance of every transaction between individuals in which an account between them is to be adjusted. *Fowle* v. *Lawrason,* 5 Peters 495; *Lafever* v. *Billmeyer et al.,* 5 W. Va. 33; *County Court* v. *Cottle,* 81 W. Va. 475. The rule is generally stated that equity will take jurisdiction: (1) Where there are mutual demands and, a fortiori, when complicated; (2) when the accounts are on one side, and a discovery is sought that is material to relief; (3) equity, having taken jurisdiction for discovery, to avoid multiplicity of suits, will administer suitable relief. Equity will decline jurisdiction: (1) Where the demands are all on one side and no discovery is claimed or is necessary; (2) where on one side there are demands and on the other mere payments or sets off and no discovery is sought or required. "While these propositions are in the main generally correct, still they do not embrace all the cases as to matters of account, in which equity should not take jurisdiction. It seems that no general rule embracing all cases as to matters of account, in which equity will or will not take jurisdiction, can with propriety be safely laid down." *Petty* v. *Fogle,* 16 W. Va. 497; *White* v. *Cook,* 51 W. Va. 219. But, as above stated, the mutuality of accounts in this suit is between the co-defendant mining companies and could be easily adjusted between them, and both

being solvent and able to respond to a settlement of what might be due one from the other, there being no allegation in the bill that either is insolvent or unable to pay, the plaintiff is not concerned except inferentially as to the settlement of these accounts. If it should be ascertained that the White Ash Coal Co. or its assign, the Rich Block Coal Co., owed to the Royal Block a sum of money for maintenance of the Royal Block Co's. line, could that amount be set off in law as against the claim of the Croft Land Co.? The principle of set off does not apply. It could not be successfully asserted by the Royal Block Co. against the Croft Land Co's. demand until its remedy against the White Ash Co. and its successor had been exhausted. The White Ash Co. and its successor would stand between, and the claim could not be successfully asserted against the guarantor, the plaintiff, until the legal remedy against them was exhausted. But is the plaintiff even a guarantor? It has agreed to assist in maintenance, only in the event that its lessee should fail to assist. It is not clear that it has agreed to pay for the default of its lessees. It will step in and maintain the road only in the event its lessees should fail to do so. "Averments in a bill of facts showing equitable jurisdiction, which are shown by other averments and the manifest objects of the bill to be merely colorable, will not give equity jurisdiction, if the real cause of action is one for which the plaintiff has a full and adequate remedy at law." *Laidley* v. *Laidley*, 25 W. Va. 525.

These principles and considerations will apply with equal force to the allegations contained in the answer seeking affirmative relief by the Royal Block Coal Co., which answer was excepted to by the plaintiff because it showed no reason for equitable relief.

We have concluded that the plaintiff has an adequate remedy at law for asserting its claim of $1048.26 against the defendant, Royal Block Coal Co., and that the bill does not show substantial grounds for relief in equity; and therefore set aside and annul the judgment and decree of the circuit court, rendered on the 10th day of December, 1919, and dismiss the bill.

*Reversed; bill dismissed.*