HELENE MARIE FREDEKING, *An Infant, etc., et al.*

*v.*

O. R. GRIMMETT, *et al.*

(No. 10666)

Submitted January 25, 1955. Decided March 22, 1955.

746

GIVEN, JUDGE, dissenting.

*Ben K. Baer, Charles C. Wise, Jr., Frederick W. Sawyers,* for appellants.

*W. A. Brown,* for appellees.

HAYMOND, JUDGE:

In this suit in equity instituted in the Circuit Court of Summers County in May 1953, the plaintiffs Helene Marie Fredeking, an infant, Herbert A. Fredeking, an infant, by Nell Fredeking, their next friend and guardian, and Nell

Fredeking, in her own right, seek a discovery and an accounting from the defendants O. R. Grimmett, J. Lynn Swiger and Three Hundred Taxi, Inc., for rent alleged to be due the plaintiffs from gasoline used on certain premises under a lease dated June 21, 1945, between J. G. Fredeking and the plaintiff, Nell Fredeking, husband and wife, and the defendant O. R. Grimmett, forfeiture and surrender of the lease, a recovery of damages for alleged violations of its provisions, and general relief. The original bill of complaint named only Grimmett and Swiger as defendants, but by amendment Three Hundred Taxi, Inc., was made a defendant in the suit. The case was heard upon the bill of complaint, as amended, the demurrer of the defendants Grimmett and Swiger, the separate answers of each of the defendants, the general replications to the answers, and the testimony of witnesses in the form of depositions filed in behalf of the respective parties. It does not appear from any decree in the case that the circuit court ruled upon the demurrer filed by the defendants Grimmett and Swiger but, as the final decree determined the merits of the cause, the demurrer will be regarded as having been overruled. *Craig* v. *Craig*, 54 W. Va. 183, 46 S. E. 371.

By final decree entered July 13, 1953, the circuit court denied the plaintiffs the relief prayed for, dismissed the suit, and awarded costs in favor of the defendants against the plaintiffs. From this judgment this Court granted this appeal upon the petition of the plaintiffs.

The present controversy originated from a written contract dated June 21, 1945, between J. G. Fredeking and the plaintiff Nell Fredeking, his wife, as lessors, and the defendant O. R. Grimmett, as lessee, by which the lessors leased a filling station and garage building owned by them as tenants in common located on Second Avenue in the City of Hinton to the defendant Grimmett for a period of ten years from July 1, 1945. The lease provided that the lessee should pay to lessors as rental for the leased premises twenty dollars per month, in advance, and one cent per gallon on all gasoline sold at the filling station and that the payments on such gasoline should be made on the first

day of each month from and after August 1, 1945. The lease further provided that the lessee should purchase exclusively gasoline, kerosene and oil products from J. G. Fredeking who was then engaged in the business of selling gasoline; that the lessee should pay all expenses in connection with the operation of the filling station and maintain the building and the equipment in good repair during the term of the lease and at its termination surrender the premises in like condition subject to ordinary wear and tear; that the lessee should not assign or transfer the lease without the written consent of the lessors; and that upon default in the payment of rent for any month or the breach of any condition, which continued for fifteen days, the lessee should without notice immediately surrender the leased premises to the lessors.

Prior to the execution of the written lease of June 21, 1945, the defendant Grimmett had operated the premises as a service station in the name of Da & Nite Service Station under an oral lease from the owners J. G. Fredeking and Nell Fredeking who caused the property to be improved at a cost of several thousand dollars.

On August 5, 1945, J. G. Fredeking, who then owned an undivided one half interest in the property, died intestate, leaving surviving him the plaintiff Nell Fredeking as his widow and two children by a former marriage, J. G. Fredeking, Jr., and William Walter Fredeking, who were adults when this suit was instituted, and two infant children, the plaintiffs Helene Marie Fredeking and Herbert A. Fredeking, as his heirs. Prior to the institution of this suit J. G. Fredeking, Jr., and William Walter Fredeking each conveyed his undivided one eighth interest in the property and the lease to Nell Fredeking who when this suit was instituted owned and now owns an undivided three fourths interest and dower in one half of the undivided one half interest owned by her husband J. G. Fredeking, and each of the infants Helene Marie Fredeking and Herbert A. Fredeking owned and still owns an undivided one eighth interest in the property, subject to the dower of Nell

Fredeking. In 1947 Nell Fredeking qualified as guardian for the infants Helene Marie Fredeking and Herbert A. Fredeking and since that date she has continued to act as their guardian.

After the death of J. G. Fredeking his brother W. T. Fredeking qualified as administrator of the estate of J. G. Fredeking and continued to act as such until the estate was settled in October, 1948. While acting as administrator W. T. Fredeking, without any express authority from Nell Fredeking in her own right or as guardian, but in the mistaken belief, which was likewise shared by Nell Fredeking, that as administrator it was his right and duty to administer the leased property, generally managed and looked after that property, collected such rent as was paid by the defendants O. R. Grimmett and Three Hundred Taxi, Inc., and distributed the rent collected by him to Nell Fredeking personally and as guardian of Helene Marie Fredeking and Herbert A. Fredeking. From January, 1946, until the settlement of the estate in 1948, and afterwards until July, 1950, W. T. Fredeking expended $1,462.95 for improvements and repairs to the leased premises and after the settlement and until sometime in 1950 he continued to collect and distribute rent received from the premises. In 1950, after several demands upon W. T. Fredeking by Nell Fredeking for the records of the transactions conducted by him in connection with the leased premises she received the records and after examining them she and the two infants instituted this suit.

After the execution of the written lease the defendant O. R. Grimmett continued to occupy the leased premises and to operate the service station until July 1, 1948. While doing so he also maintained a fleet of taxicabs which were furnished with gasoline at the service station. He conducted the service station business and the taxicab business separately and operated the one as the Da & Nite Service Station and the other as the Three Hundred Taxi Company. He purchased the gasoline, which was sold at retail and furnished to his taxicabs at the service station,

both before and after the execution of the lease, from a partnership known as Service Oil and Gas Company, in which J. G. Fredeking and Nell Fredeking were partners and of which J. G. Fredeking was the manager until his death in August 1945. After the death of J. G. Fredeking that partnership was dissolved and a partnership known as Fredeking Distributing Company, in which Nell Fredeking was a partner until sometime in 1950, and of which W. T. Fredeking was the manager, was formed and the defendant Grimmett purchased from the new partnership the gasoline used at the service station. Each partnership acted as the distributor of gasoline for Esso Standard Oil Company from which the gasoline used at the service station was obtained. Nell Fredeking, as a partner, had access to the records of each partnership but she did not request information from either partnership or examine any of its records.

A short time before June 30, 1948, the defendant O. R. Grimmett entered into negotiations with the defendant J. Lynn Swiger for the sale by the defendant Grimmett of his service station and taxicab business and the transfer of the lease. In connection with that transaction the defendant Grimmett caused the incorporation of Three Hundred Taxi, Inc., and became the owner of substantially all its capital stock. After discussing the matter with W. T. Fredeking, who was then acting as administrator and who, without the knowledge or the consent of Nell Fredeking personally or as guardian of the infants, verbally consented to and in writing joined in the assignment of the lease by the defendant Grimmett to the Three Hundred Taxi, Inc., the defendant O. R. Grimmett sold the stock owned by him in the Three Hundred Taxi, Inc., to the defendant J. Lynn Swiger who was told by W. T. Fredeking that the assignment of the lease by the defendant O. R. Grimmett was valid. On July 1, 1948, the defendant Three Hundred Taxi, Inc., took possession of the leased premises and since that date it has possessed and operated the service station, purchasing gasoline from the Fredeking Distributing Company, and has conducted a taxicab business at that place.

The defendant J. Lynn Swiger is the owner of 98% of the stock of the defendant Three Hundred Taxi, Inc., and is its president and general manager.

The plaintiff Nell Fredeking was not consulted by W. T. Fredeking or by either of the defendants Grimmett and Swiger about the assignment of the lease by the defendant Grimmett to the defendant Three Hundred Taxi, Inc., before it was made. Shortly afterwards, however, she learned through a local newspaper that the lease had been assigned and the service station had been transferred to the defendant Swiger or the defendant Three Hundred Taxi, Inc. The following day she mentioned the matter to the defendant Grimmett who did not inform her of the details of the transaction but told her that W. T. Fredeking was to talk to her about it. She then made inquiry of W. T. Fredeking who told her that the transaction was satisfactory and that the service station would be run by Swiger but he gave her no further information concerning the transaction. She did not at any time give her express consent to the transfer but it is evident that she knew soon after the first of July, 1948, that the defendant Three Hundred Taxi, Inc., represented by the defendant Swiger, was in possession of the leased premises and was operating the service station. She also received from W. T. Fredeking or Fredeking Distributing Company her share of the rent paid by Three Hundred Taxi, Inc., during the period following the assignment of the lease until sometime in August, 1950, when she refused to accept a check of the defendant Three Hundred Taxi, Inc., for rent in the amount of $68.23, sent her by the defendant Swiger. In September, 1950, she also refused to accept a check of the defendant Grimmett for $127.13 in payment of rent then due and owing by him and since that time she has declined to accept and has not received any payments of rent from any of the defendants.

Sometime during the period the defendant Grimmett operated the service station at its present location, but before the execution of the lease of June 21, 1945, he used

a pump on a nearby lot to supply gasoline to his taxicabs and, at the suggestion of J. G. Fredeking, who was interested as a distributor in selling gasoline to the defendant Grimmett for that purpose, that pump was dismantled. The taxicabs were then supplied with gasoline by the defendant Grimmett through the facilities installed at the service station where the gasoline purchased by him was delivered. This practice continued after the execution of the lease.

The defendant Grimmett insists that by virtue of the foregoing arrangement between him and J. G. Fredeking he was not required to pay any rent either before or after the execution of the lease for the gasoline, which was delivered at the filling station and there furnished to the taxicabs operated by him, and that under the lease the only rent required to be paid by him was twenty dollars per month and one cent on each gallon of gasoline sold by him at retail at the service station. The defendants J. Lynn Swiger and Three Hundred Taxi, Inc., adopt the same view.

On the contrary the plaintiffs contend that under the provision of the lease that the lessee pay monthly, beginning August, 1945, rent of one cent per gallon on all gasoline sold at the service station, the lessee is required to pay such rent on all gasoline supplied to the taxicabs operated by the defendant Grimmett and by the defendant Three Hundred Taxi, Inc., and on all gasoline sold at retail at the service station.

The testimony of the plaintiff Nell Fredeking relating to the delivery of gasoline to the service station during the period July 1, 1945, to May 1, 1946, is based on records of Esso Standard Oil Company from which all gasoline delivered to the service station was obtained. These records were examined by her and were introduced in evidence as exhibits by stipulation of counsel representing the respective parties. She testified that in July, 1945, 7,728 gallons were delivered and the sum of $77.28, at the rate of one cent per gallon, was paid as rent, in August, 1945,

10,946 gallons were delivered and the sum of $99.46 was paid as rent, in September, 1945, 9,835 gallons were delivered and the sum of $98.35, at the rate of one cent per gallon, was paid as rent, in October, 1945, 14,537 gallons were delivered and the sum of $145.37, at the rate of one cent per gallon, was paid as rent, in November, 1945, 13,508 gallons were delivered and the sum of $135.08, at the rate of one cent per gallon, was paid as rent, in December, 1945, 12,846 gallons were delivered and the sum of $128.64 was paid as rent, in January, 1946, 14,760 gallons were delivered and the sum of $147.60, at the rate of one cent per gallon, was paid as rent, in February, 1946, 12,223 gallons were delivered and the sum of $123.22 was paid as rent, in March, 1946, 15,623 gallons were delivered and the sum of $156.23, at the rate of one cent per gallon, was paid as rent, and in April, 1946, 16,402 gallons were delivered and the sum of $164.02, at the rate of one cent per gallon, was paid as rent; that in the month of September, 1945, only 516 gallons of gasoline were delivered to the service station for the Three Hundred Taxi Company; that the gasoline delivered to the service station during the period July 1, 1945, to May 1, 1946, was billed to Da & Nite Service Station and not to the Three Hundred Taxi Company, except the item of 516 gallons; that from May 1, 1946, to July 1, 1948, the gasoline delivered to the service station was billed separately to Da & Nite Service Station and Three Hundred Taxi Company; and that no rent was paid by the defendant Grimmett on the gasoline billed to the Three Hundred Taxi Company which was delivered to the service station during that period.

The defendant Grimmett, in his testimony, admitted that no rent was paid by him on the gasoline delivered to him for the Three Hundred Taxi Company for the reason that under the lease he was not required to pay any rent on that gasoline. He testified that the gasoline delivered to the service station which was used by the taxicabs operated by him was at all times billed to Three Hundred Taxi Company. He also testified that the record of the Esso Standard Oil Company, which showed no

separate billing of gasoline to the Three Hundred Taxi Company during the period July 1, 1945, to May 1, 1946, except the 516 gallons, is incorrect, but that he had no evidence to contradict that record.

The testimony of the plaintiff Nell Fredeking and the exhibits introduced in evidence by stipulation show that after the transfer from the defendant Grimmett to the defendant Three Hundred Taxi, Inc., the gasoline delivered to the service station was billed to "300 Swiger"; that in 1948, 150,291 gallons of gasoline were delivered to the service station but that rent was paid on only 108,614 gallons; that in 1949, 107,866 gallons of gasoline were delivered to the service station but that rent was paid on only 61,179 gallons; that in 1950, 92,210 gallons of gasoline were delivered to the service station but that rent was. paid on only 25,874 gallons. These figures show that no rent was paid on the difference between 150,291 gallons and 108,614 gallons in 1948, the difference between 107,866 gallons and 61,179 gallons in 1949, and the difference between 92,210 gallons and 25,874 gallons in 1950, and indicate that some of the gasoline represented by these differences was used at the service station to supply with gasoline the taxicabs operated by the defendant Three Hundred Taxi, Inc. The defendant Swiger, in his testimony, admitted that no rent was paid by Three Hundred Taxi, Inc., on the gasoline furnished to the taxicabs because under the lease rent was not required to be paid on the gasoline used for that purpose.

The plaintiff Nell Fredeking also testified that the total amount of unpaid rent on the gasoline delivered to the service station and billed to Three Hundred Taxi Company before the transfer in 1948 and to "300 Swiger" after that date, which was supplied to taxicabs operated by the defendant Grimmett before the transfer and by the defendant Three Hundred Taxi, Inc., after the transfer, is $2900.54; that no base rent of twenty dollars per month was paid for the months of July and August, 1945, July, 1947, July and October, 1948, and January and February,

1949; and that the amount of the unpaid base rent during the period July 1, 1945, to December 1, 1951, is $500.00.

The defendant Grimmett, in his testimony, admitted that, due to an oversight, he had not paid the base rent for the month of July, 1947; but he stated that he was ready, willing, and able to pay that rent. He also stated that he had been relieved of the payment of the base rent for the month of July, 1945, by J. G. Fredeking because the building was not completed until August of that year; that he had no record to show the payment of the base rent for the months of July and October, 1948, and January and February, 1949; and that his records prior to 1947 had been misplaced. The defendants Grimmett and Swiger in their testimony denied that any rent is due and unpaid for the gasoline used to supply taxicabs or for any month, except the amounts that the defendants Grimmett and Three Hundred Taxi, Inc., are ready, willing, and able to pay; but the defendants did not, by any testimony, challenge or controvert the accuracy of the figures and the amounts testified to by the plaintiff Nell Fredeking.

The testimony shows that between January 7, 1946, and July 20, 1950, W. T. Fredeking expended $1,462.95 upon the leased premises, which amount was evidently composed of funds of the estate of J. G. Fredeking and funds of the plaintiffs derived from the premises; but it does not show how much of the foregoing amount belonged to the estate or to the plaintiffs, or how much of it was expended for improvements or for repairs. The testimony also shows that there was a defect in the construction of the roof of the building resulting from the use of green or unseasoned lumber which caused it to separate from the building and that leakage resulted which damaged the interior of the building and rendered necessary certain repairs. The testimony further shows that during the period the defendant Grimmett occupied the property he kept it in a fair condition of repair and paid for the repairs made by him; that after the premises were transferred to the defendant Three Hundred Taxi, Inc., it made and paid

for some repairs but that it has permitted the condition of the building to deteriorate to some extent in that respect; that there is some accumulation of dirt or waste on the premises; and that the building now needs to be painted and the cause of the leak removed to place it in proper condition of repair. The evidence, however, does not disclose the amount expended for repairs by or for the plaintiffs or by any of the defendants.

Though the defendants Grimmett and Swiger assign as one of the grounds of the demurrer filed by them that equity does not have jurisdiction to entertain this suit and though the demurrer, not having been passed upon by the circuit court must because of the final decree be regarded as having been overruled, the defendants do not raise that question in this Court. The plaintiffs in the bill of complaint as amended seek an accounting and ask a discovery from the defendants as material to the relief sought. In 1 Michie's Jurisprudence, Accounts and Accounting, Section 10, the text contains this language: "While the jurisdiction of equity has been a controversial question, it is firmly established that accounting between parties has always been the basis for equity jurisdiction, and the existence of a remedy at law cannot deprive courts of equity of jurisdiction in a matter that comes within the scope of their elementary jurisdiction. The facilities of a court of equity are much better adapted to settle a complicated account, particularly when a discovery is sought, than are the facilities of a court of law. And having once acquired jurisdiction, equity will go on to completely adjudicate the cause." Whether equity will assume jurisdiction in a particular case is a matter resting within the sound discretion of the court; but the jurisdiction of courts of equity to state and settle accounts, or to compel an accounting, is exercised in a great variety of cases of original equity cognizance including those in which fiduciary and trust relationships are involved, in which fraud is charged, or in which a discovery is sought. 1 Am. Jur., Accounts and Accounting, Section 52.

In *Belcher* v. *Big Four Coal and Coke Company*, 68 W. Va. 716, 70 S. E. 712, this Court used this language: "It seems, however, to be well settled that, in matters of account growing out of privity of contract between parties, not only where the accounts are mutual and intricate, but also where the accounts are all on one side, and a discovery is sought, which is material to plaintiff's relief, equity has jurisdiction." See also *Dankmer* v. *City Ice and Fuel Company*, 111 W. Va. 676, 163 S. E. 430. In discussing the jurisdiction of equity to settle accounts and in stating the general rule this Court said in *Rothwell* v. *Brice*, 94 W. Va. 466, 119 S. E. 293: "While the jurisdiction of equity for the settlement of accounts is not clearly defined in this state, the general rule is that equity will take jurisdiction: 1. where there are mutual complicated demands; 2. where the accounts are on one side, and discovery is sought material to relief; 3. and equity having taken jurisdiction for discovery, to avoid a multiplicity of suits, will administer suitable relief. Jurisdiction will be declined: 1. Where the demands are all on one side and no discovery is claimed or is necessary; 2. where on one side there are demands, and on the other mere payments or sets off and no discovery is sought or required." See also *Croft Land Company* v. *Royal Block Coal Company*, 87 W. Va. 570, 105 S. E. 799.

Here the claim of the plaintiffs is an account on one side, the account is of reasonably long duration, and a discovery is necessary to enable the plaintiffs to ascertain the amount of their claim for rent based on the number of gallons of gasoline sold at retail and used to supply the taxicabs operated by the defendants Grimmett and Three Hundred Taxi, Inc. The defendants introduced in evidence by stipulation as exhibits records which disclose quantities of gasoline delivered to the service station, billed separately to Da & Nite Service Station, Three Hundred Taxi Company, and "300 Swiger" which are necessary or material to establish the amount of the claim of the plaintiffs. These facts bring this suit within the rule

which recognizes the jurisdiction of a court of equity to state and settle accounts between parties.

The provision in the lease by which the lessee "further agrees to pay one cent (1c) per gallon on all gasoline sold at the aforesaid filling station during the term of this lease" is rendered ambiguous by the use of the word "sold." This is evident from the diametrically opposite contentions of the plaintiffs and the defendants as to its meaning and effect. From the testimony of the plaintiff Nell Fredeking it is clear that the defendant Grimmett, the lessee in the lease, by paying the rent of one cent per gallon on all the gasoline delivered to the service station between July 1, 1945, and May 1, 1946, which was billed to Da & Nite Service Station, except 516 gallons billed to Three Hundred Taxi Company, some of the gasoline billed to Da & Nite Service Station having been used by the defendant Grimmett to supply the taxicabs operated by him during that period, construed the quoted provision to apply both to the gasoline sold at retail and to the gasoline used to supply the taxicabs. When a contract is ambiguous and of doubtful and uncertain meaning, and the parties have by their contemporaneous or subsequent conduct placed a construction upon it which is reasonable, that construction will be adopted by the court. *Summit Coal Company* v. *Raleigh Smokeless Fuel Company,* 99 W. Va. 11, 128 S. E. 298; *Holdred Collieries of West Virginia* v. *Boone County Coal Corporation,* 97 W. Va. 109, 124 S. E. 493; *Myers* v. *Carnahan,* 61 W. Va. 414, 57 S. E. 134; *Clark, Trustee* v. *Sayers and Lambert,* 55 W. Va. 512, 47 S. E. 312.

The testimony shows that the lessors invested several thousand dollars in the construction and the equipment of the premises leased to the defendant Grimmett for the purpose of increasing the amount of gasoline distributed and used through the facilities of the service station and that the parties to the lease intended that the taxicabs, of which there were approximately ten in number, operated by the defendant Grimmett would be supplied with gasoline at the service station. It is unreason-

able to conclude that the lessors would have been willing to lease the premises to the defendant Grimmett for a ten year period at a rent of twenty dollars per month and of one cent per gallon on only the gasoline sold at retail when the taxicabs were in regular operation and furnished a substantial and continuous source of rent from the relatively large amount of gasoline supplied to them at the service station. The reasonable conclusion, as the plaintiffs contend and as the conduct of the defendant Grimmett indicated during the period July 1, 1945, to May 1, 1946, is that the parties to the lease intended that all gasoline delivered to the service station and distributed at retail and supplied to and used by the taxicabs should be subject to the rent provided in the lease. Under the evidence in this case the provision in the lease which requires the lessee to pay one cent per gallon on all gasoline sold at the service station during the term of the lease is construed to apply alike to gasoline sold at retail and to gasoline supplied to taxicabs operated by the lessee and his assignee and requires the lessee to pay such rent on all such gasoline.

The lease has not been terminated and the plaintiffs are not entitled to possession of the premises under the provision that upon default in the payment of rent for any month or for breach of any condition, which shall continue in force for fifteen days, the lessee will immediately and without notice surrender the leased premises to the lessors. W. T. Fredeking, as administrator of the estate of J. G. Fredeking, did not have authority to consent for the plaintiff Nell Fredeking, individually or as guardian for the infant plaintiffs, or for the infant plaintiffs, to the assignment of the lease by the defendant Grimmett to the defendant Three Hundred Taxi, Inc., and none of the plaintiffs consented to the assignment. As the defendant Grimmett did not obtain the expressly required written consent of the plaintiffs to the assignment of the lease, its assignment by him to the defendant Three Hundred Taxi, Inc., constituted a violation of that provision of the lease and would have operated to terminate and forfeit

the lease if the plaintiff Nell Fredeking had not subsequently acted as she did. Though she did not for some time learn the details of the transaction, she did learn, within two days after the assignment, that the lease had been assigned and that the defendant Swiger or the defendant Three Hundred Taxi, Inc., had taken possession of the leased premises and was operating the service station. With this knowledge she accepted and received, individually and as guardian of the infants, rent which accrued subsequent to the assignment and was collected by W. T. Fredeking, until sometime in 1950 when she refused to accept or receive any further rent. By her acceptance of such rent she waived her individual right to invoke and enforce the forfeiture provision of the lease because of its unauthorized assignment by the defendant Grimmett.

The well established general rule is that a lessor waives his right to forfeit a lease or is estopped from enforcing a forfeiture for a breach of covenant or condition in a lease when, after such breach of covenant or condition, he accepts subsequently accruing rent from his tenant with knowledge or full notice of such breach, unless there are circumstances to negative the presumption of his affirmance of the continuance of the lease which arises from his acceptance of rent; and such waiver or estoppel of the right of the lessor to insist upon a forfeiture of a lease which results from acceptance of rent occurs regardless of the person who pays the rent, if the payment is in fact received as rent and is made in behalf of the lessee. See 32 Am. Jur., Landlord and Tenant, Section 883; 51 C. J. S., Landlord and Tenant, Section 117 (2) (a). In *Kanawha-Gauley Coal and Coke Company* v. *Sharp,* 73 W. Va. 427, 80 S. E. 781, 52 L. R. A. (N. S.) 968, Ann. Cas. 1916E, 786, this Court held, in point 1 of the syllabus, that "If a lessor, with knowledge of a breach by the lessee of the restriction against assignment of the lease, permits the assignee to remain in possession of the premises and accepts subsequently accruing rents from him, the breach is waived." See also *Hukill* v. *Myers,* 36 W. Va. 639, 15

S. E. 151; *McKildoe's Ex'r.* v. *Darracott,* 13 Gratt. 278; Annotation III, 109 A. L. R. 1269.

The doctrine of waiver or estoppel by reason of the acceptance by Nell Fredeking, as guardian of the infant plaintiffs, of rent to which they are entitled and which accrued subsequent to the assignment, does not apply to the infant plaintiffs or impair their right to enforce the forfeiture provision of the lease because of its unauthorized assignment by the defendant Grimmett. The infant plaintiffs are legally incapable of consenting to the assignment of the lease or of waiving the benefit of its provisions and they can not, during their infancy, receive or use the rent accepted and received for them by their guardian. The mere receipt by their guardian of rent to which they are entitled does not, of itself, estop them from asserting their right under the forfeiture provision of the lease. Their conduct with respect to the assignment of the lease and the acceptance by their guardian of rent accruing subsequent to the assignment amounts at most to mere silence or quiescence and is not sufficient to raise an estoppel. See *Williamson* v. *Jones,* 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891. There is no suggestion of intentional fraud or misrepresentation committed or engaged in by them. The doctrine of estoppel applies to infants of years of discretion for intentional fraudulent conduct, in favor of a person who is misled by such conduct, but estoppel by contract and for mere silence does not apply to such infants. *Headley* v. *Hoopengarner,* 60 W. Va. 626, 55 S. E. 744.

Though the right of the infant plaintiffs to enforce the forfeiture provision of the lease by reason of the breach by the defendant Grimmett of the provision of the lease which prohibits its assignment without the written consent of the lessors has not been impaired or affected by the acceptance by their guardian of rent accruing subsequent to the assignment to which the infant plaintiffs are entitled, neither they nor the plaintiff Nell Fredeking, singly or together, can enforce the forfeiture provision of the lease in this suit. As already pointed out, each of the infants owns an undivided one eighth interest, subject

to the dower of the plaintiff Nell Fredeking, and she owns the remaining three fourths undivided interest, in the leased premises; and they own these undivided interests as tenants in common. The covenant in the lease of the lessee Grimmett not to assign or transfer the lease without the written consent of the lessors is indivisible and entire and may not be apportioned by the death of the lessor J. G. Fredeking among his heirs so that his heirs or their successors or the surviving lessor Nell Fredeking as tenants in common can enforce the forfeiture provision of the lease either in its entirety or proportionately as to the interest owned by each of them. All the heirs of J. . G. Fredeking, or their successors, and the surviving lessor Nell Fredeking, must concur and unite in the enforcement of the forfeiture provision for its breach by the lessee; and there can be no forfeiture of the lease by less than all the tenants in common who own undivided interests in the property. *Howard* v. *Manning,* 79 Okla. 165, 192 P. 358, 12 A. L. R. 819.

A forfeiture provision in a contract of lease upon real estate owned jointly by tenants in common is indivisible and such lease can not be forfeited by less than all the owners of the undivided interests for the reason that if the lease could be forfeited by less than all the owners of the undivided interests the lessee would be bound by the lease as to some of such owners and discharged as to other such owners. *Eurengy* v. *Equitable Realty Corporation,* 341 Mo. 341, 107 S. W. 2d 68.

In *Howard* v. *Manning,* 79 Okla. 165, 192 P. 358, 12 A. L. R. 819, the Court used this pertinent language:

"If the right to enforce a forfeiture accrues and a part of the tenants in common are allowed to elect to enforce the forfeiture, then the lessee is placed in the inequitable position of being bound by the lease as to part of the tenants and discharged by a part, which means that the lessee is still liable as a lessee to some of the tenants in common, although he cannot enjoy any of the benefits of his lease without becoming a trespasser and liable for damages to the other owners of the land. A fair con-

ception of honesty and fair dealing negatives a construction of the lease imputing to the lessor and lessee an understanding or intention that the lessee's covenants of the character involved in this case are subject to apportionment by the death of the lessor leaving more than one heir. If the death of the lessor operates to apportion the benefits of the covenant among his heirs, then there can be a partial forfeiture, leaving the lessee bound to part of the heirs but denied all practical benefits under the lease. This would create a sort of tenancy which, we believe, it would be unreasonable to hold that the lessor and lessee intended or contemplated.

"Under the American authorities the lessee's covenants, unless expressed otherwise, are joint and indivisible under a lease executed jointly by all the tenants in common. The heirs of a deceased lessor are in no higher position with respect to the covenants in the lease than they would be if they jointly executed the same lease, although the lease may expressly reserve to each his proportionate interest in the rents."

The plaintiff Nell Fredeking, as the owner of an undivided three fourths interest in common with the infant plaintiffs who together own the remaining undivided one fourth interest in the lease, having waived her right to enforce the indivisible forfeiture provision of the lease, is not entitled to that relief, and the infant plaintiffs, as the owners of only an undivided interest as tenants in common, can not enforce a forfeiture of the lease. In consequence none of the plaintiffs may enforce the forfeiture provision of the lease in this suit. When it appears in a suit instituted by all the owners of undivided interests in real estate subject to a lease, which contains a forfeiture provision for breach of a condition of the lease by the lessee, that one of such owners has waived his right to enforce a forfeiture of the lease, forfeiture of the lease may not be had by the owners of the other undivided interests even though they have not waived their right to forfeit such lease or are not estopped from enforcing such right of forfeiture.

As to the claim of the plaintiffs for damages for breach of the provision of the lease which requires the lessee to maintain the building and the equipment in a good state of repair, though there is some evidence that the building and the equipment have not been so maintained by the defendant Grimmett or by the defendant Three Hundred Taxi, Inc., the evidence indicates that the unsatisfactory condition of the building and the equipment is due to some extent to the defect in the construction of the roof of the building, and the testimony introduced in behalf of the plaintiffs does not establish any definite amount expended by or for the plaintiffs for repairs or any definite amount of damages which have resulted from the failure of the defendant Grimmett and the defendant Three Hundred Taxi, Inc., to keep the building and the equipment in the state of repair required by the lease. For these reasons the plaintiffs are not entitled to recover in this suit any amount of damages for breach of that provision of the lease.

Under an express provision of a lease which requires the lessee to pay the rent provided in the lease, the liability of the lessee for the payment of such rent continues during the term of the lease, and an assignment of the lease without the consent of the lessor does not relieve the lessee from his liability to pay the rent which accrues after the assignment, in the absence of release by the lessor of such liability, *Kanawha-Gauley Coal and Coke Company* v. *Sharp,* 73 W. Va. 427, 80 S. E. 781, 52 L. R. A., N. S., 968, Ann. Cas. 1916E, 786; *Kimble* v. *Wetzel Natural Gas Company,* 134 W. Va. 761, 61 S. E. 2d 728; *Bankers Pocahontas Coal Company* v. *Monarch Smokeless Coal Company,* 123 W. Va. 53, 14 S. E. 2d 922, *Easley Coal Company* v. *Brush Creek Coal Company,* 91 W. Va. 291, 112 S. E. 512; 32 Am. Jur., Landlord and Tenant, Sections 357 and 374; and the assignee of the lessee is also liable to the lessor for rent which accrues after the assignment and while he holds the leased premises. *Hale* v. *Grow,* 88 W. Va. 173, 106 S. E. 409; 32 Am. Jur., Landlord and Tenant, Section 374. See also Annotation Ia, 36 A. L. R. 316; *Plassmeyer* v. *Brenta,* 24 N. J. Super.

322, 94 A. 2d 508. The evidence shows clearly that the plaintiffs are entitled to recover from the defendant O. R. Grimmett the aggregate of the amounts of $2900.54 and $500.00, or the sum of $3400.54, with interest from December 1, 1951, and to recover from the defendant Three Hundred Taxi, Inc., such part of such aggregate amounts as has accrued subsequent to July 1, 1948, the date of the assignment of the lease, with interest from December 1, 1951.

The final decree of the circuit court is reversed and this cause is remanded to that court with directions that it reinstate the cause, enter a decree for the plaintiffs, as indicated above, for the unpaid rent due from the defendants O. R. Grimmett and Three Hundred Taxi, Inc., and award costs in favor of the plaintiffs against all the defendants.

*Reversed and remanded
with directions.*

GIVEN, JUDGE, dissenting:

It is my position that there is no ambiguity in the simple written rental contract involved and, that though the word "sold" be assumed to be ambiguous, the evidence relating to any ambiguity supports the finding and holding of the trial court as to what was intended by the parties. The rental provided in the contract for the property leased was "twenty dollars ($20.00) per month payable in advance, and the said party of the second part further agrees to pay one cent (1¢) per gallon on all gasoline sold at the aforesaid filling station". In the course of the operation of the filling station the lessee, also the owner of a taxi business, operated from nearby premises, purchased gasoline from a distributing company, for resale, and, on a separate account, purchased gasoline from the same distributing company for use in the taxi business. Gasoline purchased on both accounts was delivered into the tank at the filling station. It is the one cent per gallon for the gasoline used by the lessee in his taxi business and delivered into the filling station tank which constitutes the $2,900.54 claimed by plaintiffs

to be owing, plus $500.00 for "base rent" for some unspecified period or periods of time "from 1945 to 1951", which constitute the sum for which judgment is directed to be entered against defendants.

The only basis for any recovery by plaintiffs of any rental relating to the one cent gallonage charge rests wholly on the assumption that there exists an ambiguity in the simple, everyday word "sold" used in the agreement. It is not contended, and can not be, that any other word or phrase in the rental agreement conflicts with the usual and plain meaning of the word "sold". Neither is there any suggestion, in the record, that the word was not used in its plain, ordinary or usual sense. The only basis for the majority view that ambiguity exists in the contract is that ambiguity "is evident from the diametrically opposite contentions of the plaintiffs and the defendants as to its meaning and effect". If "contentions" of parties litigant determine whether a contract is ambiguous, then every contract contested by litigation is necessarily ambiguous. "5. It is only where the language of a contract is ambiguous and uncertain and susceptible of more than one construction that a court may under the well established rules of construction interfere to reach a proper construction and make certain that which in itself is uncertain." *Griffin* v. *Coal Co.*, 59 W. Va. 480, 53 S. E. 24, 2 L. R. A., N. S., 1115. To sustain the conclusion reached by the majority in the instant case, it must be held that the word "sold" includes within its meaning the meaning of the word "used", and which would necessarily mean that the majority conclusion is that the lessee "sold" gasoline to himself.

Neither is there any evidence in the record establishing any contemporaneous or subsequent construction of the contract by the parties. The most that can be said in favor of any such construction is that the testimony of the plaintiff Nell Fredeking is to the effect that the one cent gallonage rental was paid on all gasoline billed to the station for several months subsequent to the execution of the rental contract. Assuming that such testimony is correct, though it is strongly denied by defendants, it

is clear, as will appear from evidence hereinafter quoted, that defendants never interpreted the word "sold" as meaning that all gasoline delivered to the station was to be subject to the one cent gallonage charge. Even the plaintiff Nell Fredeking, the only witness testifying on behalf of plaintiffs concerning such facts, admits that she had no knowledge concerning the matter until after she examined certain records in the State Tax Commissioner's office years later, probably about the time of the institution of the instant cause. Moreover, it can not be denied that defendants, after May, 1946, treated the contract as requiring payment of the gallonage rental only as to the gasoline actually sold, not as to that used by lessee in his own business. If the payment of the gallonage charged for several months, through some error, be an indication of plaintiffs' interpretation of the contract, would not the refusal of defendants to pay the gallonage charged for several years, coupled with the fact of acceptance of all other rentals by lessors, be most strongly indicative of the interpretation of the contract by all of the interested parties? There can be no question that Nell Fredeking is charged with knowledge of such position of defendants, since payments of all rentals were, in accordance with prior arrangements, made through the partnership of which she was a member.

Assuming, however, that the word "sold" is of itself ambiguous, or that the question of ambiguity of the rental agreement is revealed by the evidence, or by the actions of the parties, the evidence, I think, conclusively supports the finding and holding of the trial court. Only two witnesses testified on behalf of plaintiffs. One witness testified only as to what was, in his opinion, a reasonable monthly rental for the filling station premises, which was clearly immaterial, in view of the written contract, admitted by all to be valid. The other witness testifying on behalf of plaintiffs, Nell Fredeking, though a party to the rental contract, gave not a word of testimony as to the supposed or intended meaning of the word "sold", as used in the contract.

On the other hand, defendants' evidence on the point

appears clear and cogent. As pointed out in the majority opinion, prior to the execution of the rental agreement the gasoline used by Grimmett in his taxi business was delivered to a tank different from the one located on the premises covered by the rental agreement. W. T. Fredeking, who is not a party to this suit and not interested in the result thereof, but who was familiar with the transaction and was one of the partners selling and delivering gasoline to Grimmett, testified to the effect that the gasoline used in the taxi business was, over a long period of time, delivered to a tank located on a lot owned by Grimmett, from which lot the taxi business was operated, a different lot from the one covered by the rental agreement, and that an agreement was made "to handle the gas from the station. [Meaning the filling station leased.] In filling up the tank at the old site we had to block the sidewalk and had numerous complaints about it, and we agreed to any gas he used for the taxi company he was not to pay any rent on". After the death of J. G. Fredeking, the distributing company changed its name, Nell Fredeking being then made a partner therein. Concerning the manner of the payment of the rent, the witness W. T. Fredeking, also a partner in the new company, testified: "Q. Was the business handled the same way after the new Company was formed as it was before? A. Yes, sir, the same. Q. I will ask you to state whether they delivered the gasoline to the Taxi Company free of rent as they had before? A. Yes, the same as in the past." It is significant, I think, that the plaintiff Nell Fredeking was a member of the partnership which entered into such an agreement. She does not deny the statement, unless her testimony above referred to concerning the nonpayment of rent be considered such a denial. The witness Falconer, who was plant manager for the distributing company, the company through which rentals were paid and the company delivering gas to the premises leased, and later an employee of Grimmett from April, 1946, to March, 1951, corroborated the witness W. T. Fredeking, and testified positively that "There was no rental charged on any gasoline delivered to 300 Taxi Company, no, sir". This witness further testified that "Gasoline delivered

to the service station was billed to O. R. Grimmett DBA O. R. Grimmett Service Station, the gasoline delivered to the 300 Taxi Company was billed to the 300 Taxi Company", and that he was "instructed by Mr. Fredeking to bill the gasoline in this way". Another witness, Hodge, who was an employee of Grimmett from 1944 to 1948 or 1949, was asked: "And was there a rental added to that portion of the gasoline used by the 300 Taxi Company?" His answer was, "No." Grimmett, the lessee, was asked "to state if you know what the word 'sold' had reference to in this lease". His answer was, "Gasoline sold at retail". This witness, testifying as to the reason why the arrangement was made to deliver the gasoline used by the taxi company to the filling station, instead of to the old location, where admittedly no rental was to be charged against the lessee, testified: "It was a very difficult thing to unload gasoline from a tank truck. The lot and street was not level, the truck rested across the sidewalk and blocked traffic and the gas would not drain, people complained generally about it—the blocking of traffic." Does not such testimony, actually not disputed in the record, make it crystal clear that the arrangement whereby the gasoline used in the taxi business was to be delivered to the filling station tank, instead of the tank at the old location, was for the special benefit of the distributing company, of which the plaintiff Nell Fredeking, or her husband, J. G. Fredeking, were partners? Or shall we assume that the lessee agreed to the change merely for the privilege of paying the additional one cent gallonage rental?

The decision of the majority is based on the theory that the use of the word "sold" in the rental agreement constitutes an ambiguity. Thus far I have attempted to demonstrate the lack of support of that theory in the record. My own belief is that the question which should control the decision in this case is whether the finding of the trial court is supported by the evidence. Only a simple rental contract, of about two pages, is involved. The provisions therein are not unusual. Only one question of fact is actually involved, whether or not any rental

charge which accrued under the agreement remains unpaid. This, of course, includes the question as to the one cent gallonage rental. On the question of fact involved, the plaintiffs produced only one witness, Nell Fredeking, one of the plaintiffs. Her evidence in chief consists of about thirteen printed pages of testimony. Except as to her testimony relating to her examination of certain tax records, which her counsel admit is "not the best evidence of facts which they purport to show", her testimony relating to the payment or nonpayment of rent consisted of less than two pages. She testifies not a word as to the question relating to the interpretation of the word "sold".

As noted from the testimony quoted above, witnesses for defendants testified to the effect that the word "sold" was used in the rental agreement for the specific purpose of limiting the gallonage charge to the "Gasoline sold at retail" because of the difficulty had by the distributing company in making deliveries to the old tank, and that the new arrangement was made at the instance of the distributing company, in which Nell Fredeking was a partner. It was also shown, by the evidence quoted above, that during practically the entire period of time of the operation of the filling station, the quantities of gasoline sold to the station and the quantities of gasoline delivered for use in the taxi business were billed separately, and it was also shown by a former plant manager of the distributing company, which company collected the rentals by proper arrangement, and in which company Nell Fredeking was a partner, that "There was no rental charged on any gasoline delivered to 300 Taxi Company, no, sir". The plaintiff Nell Fredeking testified: "Q. He collected the rentals from all this property and from the Da & Nite Service Station up until he made his final settlement? Is that correct? A. That's right. Q. You made no objection to Mr. Grimmett or Mr. Swiger concerning them paying to Mr. Fredeking this money, did you? A. No, sir, I had been told by the Commissioner of Accounts that it was his duty to collect the rents." The witness J. Lynn Swiger testified to the effect that there

was never any question raised by Nell Fredeking until this suit was instituted. That Nell Fredeking, in her own right and as the duly appointed guardian of the two infants, received the rentals paid, can not be doubted. As to the rental payments, W. T. Fredeking testified, "they were paid there [at the offices of the distributing company] and then brought to the bank, I had charge of them. At the end of the year I made my settlement from the bank account". Nell Fredeking admits that she received checks from W. T. Fredeking, as personal representative of the estate of J. G. Fredeking. In these circumstances, it appears to me that the evidence unquestionably supports the finding of the trial court.

Neither am I convinced that the case before us is one for equity jurisdiction. The only claimed basis for equity jurisdiction is that an accounting was necessary. As above pointed out, the only question involved herein was whether plaintiffs were entitled to the one cent gallonage rental for gasoline used by the taxi company, the answer depending upon an interpretation of the rental contract. The rate of the gallonage rental was never in question, and information as to the number of gallons involved was available to plaintiffs at the offices of the distributing company, of which Nell Fredeking, one of plaintiffs, was a partner. The records of the "Esso Standard Oil Company", which Nell Fredeking referred to in her testimony, were as available to plaintiffs as to defendants. The records of the filling station and of the taxi company were available to plaintiffs at all times, and Nell Fredeking was informed that she could examine the "invoices at any time", though she never sought to examine them. In these circumstances, I can see nothing requiring any accounting in equity. This is simply a proceeding to recover unpaid rent. No discovery was needed. The account was not intricate or complicated. Only where an account is intricate and complicated can equity take jurisdiction for settlement of an account. See *Rothwell* v. *Brice*, 94 W. Va. 466, 119 S. E. 293, and cases there cited. "Matters of account, originally cognizable only at law, are now within the jurisdiction of equity, but only when some

special ground of equity jurisdiction exists, such as fiduciary relations, mutual or complicated accounts, fraud, or the need of discovery; and if a penal statute is involved, no accounting can be had unless the penalty is waived." 1 C. J. S., Accounting, Section 14. I am, therefore, of the opinion that defendants effectively have been denied their right to have the matter decided by a jury. Upon this ground, if for no other reason, the action of the trial court in dismissing the bill of complaint should be sustained, or the case remanded for the purpose of permitting plaintiffs to transfer it to the law side of the Circuit Court of Summers County. See *Kertesz* v. *Falgiano*, 140 W. Va. 469, 84 S. E. 2d 744.

Being of the views indicated, I respectfully dissent.